Wesley PAPA; Fabrizia Papa; Wesleano Papa; Kerly Papa; Luciene Papa; Cirlene Papa; Lucia Lima De Oliveir Papa, individually and as Personal Representative of the Estate of Jose Mauricio Papa, deceased, Plaintiffs–Appellants,

v.

UNITED STATES of America; U.S. Immigration & Naturalization Service, Defendants–Appellees.

No. 00–55051.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 6, 2001.

Filed Feb. 25, 2002.

Paul L. Hoffman, Schonbrun, De Simone, Seplow, Harris & Hoffman LLP, Venice, California, for the plaintiffs-appellants.

Julie Zatz and Christopher Brunwin, Assistant United States Attorneys, Office of the U.S. Attorney, Los Angeles, California, for the defendants-appellees.

Before LEAVY, T.G. NELSON, and W. FLETCHER, Circuit Judges.

## OPINION

T.G. NELSON, Circuit Judge.

Lucia Lima De Oliveir Papa and her six children appeal from the dismissal of their first amended complaint against the United States, the United States Immigration and Naturalization Service (INS), and one hundred John Does stemming from the death of Ms. Papa's husband and the children's father, Mauricio Papa, while in INS custody in 1991. The district court dismissed the appellants' *Bivens* claims for failure to state a claim, their claims under the Federal Tort Claims Act (FTCA)[1] and the Alien Tort Claims Act (ATCA)[2] as untimely and for failure to state a claim, and their Freedom of Information Act (FOIA)[3] claims on the ground that the

---

1. 28 U.S.C. § 2671 *et seq.*

2. 28 U.S.C. § 1350.

3. 5 U.S.C. § 552.

Government had produced the required materials. Finally, the district court denied the Papas' motion for leave to file a second amended complaint on the grounds that the proposed complaint did not solve the problems inherent in the previous complaint. The Papas appeal. We affirm in part and reverse in part.

## I

### Background

Mauricio Papa, a citizen of Brazil, entered the United States in 1991. He was taken into INS custody for possessing a false visa. He chose to remain in INS detention instead of being summarily deported. After three months in detention, he was killed in an exercise yard by another detainee, Benito Revarez. Revarez had a criminal record, although not for violent crime, and was a gang member. He was subsequently convicted of voluntary manslaughter for Mr. Papa's death.

In 1993, an attorney representing the Papas filed administrative claims with the INS on behalf of Mauricio Papa's estate and his survivors. The INS denied the claims on November 22, 1993, in a letter to the Papas' attorney. The letter stated that after an investigation, the INS had determined that no negligence on the agency's part contributed to Mr. Papa's death and that the agency therefore lacked liability under the FTCA. The letter also explained that the Papas had six months from the date of denial within which to file suit in a United States District Court. None of the Papas filed suit within six months of the denial of their administrative claims.

In 1998, the Papas hired a different attorney and filed claims in a federal district court for the first time. The Papas filed a first amended complaint on March 26, 1999. That complaint alleged violations of federal, state, and international law by the United States, the INS, and 100 John Does. The district court granted the defendants' motion to dismiss with prejudice on November 15, 1999. The court dismissed the appellants' *Bivens* claims on the ground that Mr. Papa, as an alien seeking entry into the United States, was not entitled to due process protection. Alternatively, the court held that the Papas had failed to meet the heightened pleading standard required in claims against federal officials. The court dismissed the Papas' claims under the FTCA and the ATCA as untimely. Alternatively, the court held that both the first amended and the proposed second amended complaints failed to state claims under these statutes. The court dismissed Appellants' FOIA claims on the ground that the Government had produced the required materials. Finally, the district court denied the Papas' motion for leave to file a second amended complaint. The Papas sought reconsideration, which the district court denied, and then filed this timely appeal. We conclude that the district court correctly dismissed the majority of issues. We conclude that the court erred, however, in its dismissal of one *Bivens* claim, asserted by the four youngest children, and all of appellants' FOIA claims. The court also erred by denying leave to amend those claims as well. The district court properly dismissed the remaining claims. Accordingly, we affirm in part, and reverse and remand in part.

## II

### Standard of Review

 We review de novo the district court's dismissal for failure to state a claim

or for lack of subject matter jurisdiction.[4] We review dismissal based on statutes of limitations de novo as well.[5] We may affirm on any proper ground supported by the record.[6] We review denial of leave to amend for abuse of discretion.[7]

## III

## Discussion

### A. Bivens *Claims*

■ In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*,[8] the Supreme Court held that federal courts have inherent authority to award damages to plaintiffs whose federal constitutional rights were violated by federal officials.[9] Appellants raised three *Bivens* claims in their first amended complaint, one of which was raised in their proposed second amended complaint.

We conclude that the *Bivens* claims of Ms. Papa and the two oldest children, as well as the claims of Papa's estate, are untimely, a point the Papas appear to concede in their reply brief. However, the claims of the four youngest appellants,

Wesleano, Kerly, Luciene, and Cirlene, are timely.

■ Although federal law determines when a *Bivens* claim accrues, the law of the forum state determines the statute of limitations for such a claim.[10] In California, the statute of limitations is one year.[11] Tolling provisions for *Bivens* claims are also borrowed from the forum state.[12] The applicable California tolling provision reads, in pertinent part, as follows:

Disabilities of minority or insanity

(a) If a person entitled to bring an action, mentioned in Chapter 3(commencing with Section 335)[ [13]] is, at the time the cause of action accrued either under the age of majority or insane, the time of the disability is not part of the time limited for the commencement of the action.[14]

Pursuant to the above provision, the limitations period for the four minor children's claims was tolled until they reached the age of majority or filed suit.

■ The defendants' argument that any tolling ended in 1993 fails. In 1993, the

---

4. *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir.2001) (failure to state a claim); *Sommatino v. United States*, 255 F.3d 704, 707 (9th Cir.2001) (lack of subject matter jurisdiction).

5. *EEOC v. Dinuba Med. Clinic*, 222 F.3d 580, 584 (9th Cir.2000).

6. *Vestar Dev. II v. General Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir.2001).

7. *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir.1999).

8. 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

9. *Id.* at 395, 91 S.Ct. 1999.

10. *See Western Center for Journalism v. Cederquist*, 235 F.3d 1153, 1156 (9th Cir.2000).

11. *Cederquist*, 235 F.3d at 1156(citing *Van Strum v. Lawn*, 940 F.2d 406, 408–10 (9th Cir.1991), for the proposition that the personal injury statute of limitations of the state applies in *Bivens* actions); Cal.Civ.Proc.Code § 340(3) (one-year statute of limitations for personal injury actions).

12. *See Matthews v. Macanas*, 990 F.2d 467, 469 (9th Cir.1993) (applying California law), *abrogated on other grounds as stated in Pascual v. Matsumura*, 165 F.Supp.2d 1149, 1151 (D.Haw.2001). The authorities cited by the defendants are not to the contrary. Defendants cite to cases involving FTCA claims, which are governed by different tolling provisions than *Bivens* claims.

13. Chapter 3 includes, in § 340, the provision for personal injury actions applicable here.

14. West's Ann. Cal.Code Civ. Pro. § 352.

appellants did not litigate the claims they now seek to raise. They only filed administrative claims.[15] Accordingly, we conclude that their actions did not end the tolling provided by the California statute.[16] Therefore, the *Bivens* claims of Wesleano, Kerly, Luciene, and Cirlene Papa are timely. We now turn to the alternative reasons for dismissal provided by the district court.

The district court dismissed the appellants' *Bivens* claims on the ground that the Due Process Clause does not protect aliens seeking entry into the United States. Alternatively, the court held that the Papas had not met heightened pleading requirements necessary for *Bivens* claims. Appellants argue that the district court erred on both grounds, and we agree.

■■■ The first amended complaint contained four constitutional claims.[17] The first and second claims alleged a violation of Mr. Papa's rights against (1) unreasonable search and seizure and (2) discrimination *upon his entry*. The district court correctly dismissed these claims. Aliens are not afforded due process protections when they seek admission to the United States.[18]

■■■ The third[19] and part of the fourteenth[20] claims alleged violations of Mr. Papa's rights[21] while he was detained. Limited rights under the Due Process Clause extend to detained aliens. Officials may not, for example, consciously disregard or act with deliberate indifference toward a detainee's safety by knowingly placing that person in harm's way.[22]

■■■ In light of the above, the question becomes whether appellants sufficiently alleged a violation of the limited rights afforded Mr. Papa while he was detained. The district court correctly concluded that heightened pleading standards apply.[23]

**15.** The fact that they were represented by an attorney seems irrelevant—one can imagine a concerned parent investigating a child's potential claims and then deciding that the child should be allowed to decide whether to pursue them once he or she reached the age of majority. The fact that an attorney was retained should not bar the child from doing just that subsequently.

**16.** Cf. *Schultz v. Harney*, 27 Cal.App.4th 1611, 1620, 1623, 33 Cal.Rptr.2d 276 (Cal.Ct.App. 1994) (holding that litigation of attorney's fee issue during plaintiff's minority did not affect Section 352 tolling as to other claims).

**17.** We do not include the ninth claim because it alleged violations of the California, not the United States, Constitution. Accordingly, it is not a *Bivens* claim.

**18.** See *Landon v. Plasencia*, 459 U.S. 21, 32–33, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982). Plaintiffs/Appellants seem to have recognized this. They dropped these claims in their proposed second amended complaint.

**19.** The third claim in the first amended complaint is identical to the first claim for relief in the proposed second amended complaint.

Accordingly, the proceeding analysis applies to the first claim in the proposed second amended complaint as well.

**20.** The fourteenth claim alleges that defendants intentionally interfered with plaintiffs' rights under the United States, California, and Brazilian Constitutions, the law of nations, and U.S. treaties by obstructing and impeding "plaintiffs' access to the judicial system and plaintiffs' access to the information pertinent to the death of the decedent and the rights and remedies of the plaintiffs...." We address the *Bivens* part of this claim here—the alleged violation of the United States Constitution. The remainder of the claim, asserting rights under the California Constitution and international law, are FTCA claims and ATCA claims respectively.

**21.** Appellants assert these rights as survivors.

**22.** See *Lynch v. Cannatella*, 810 F.2d 1363, 1375–76 (5th Cir.1987).

**23.** See *Branch v. Tunnell*, 14 F.3d 449, 450 (9th Cir.1994) ("district court must apply a 'heightened pleading standard' in *Bivens* or

Thus, appellants must not merely have alleged sufficient violations, they must also have included "some facts" in support of their allegations regarding defendants' state of mind.[24]

We conclude that the appellants have asserted a claim sufficient to withstand the motion to dismiss based on their allegations that the guards in the detention facility knowingly placed Mr. Papa in harm's way, with conscious disregard for, or deliberate indifference to, his rights under the Due Process Clause. The declaration of Mr. Papa's killer supplements the factual allegations regarding the guards' state of mind and helps satisfy the heightened pleading requirements. Thus, we conclude that the district court erred by dismissing this claim and by failing to allow amendment. The four youngest appellants should be allowed to proceed with the claim.

## B. FTCA Claims

The applicable federal statute of limitations bars all of the appellants' FTCA claims.[25] The time limitation for FTCA claims is not tolled during a claimant's minority.[26] The FTCA provides that "a tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months of the date of mailing . . . of notice of final denial of the claim by the agency to which it was presented."[27]

It is undisputed that the Papas brought their FTCA claims five years after their administrative claims were denied. The Papas' only argument, therefore, is for equitable tolling. They assert that the United States denied visas to members of the Papa family and that the recitation of those facts adequately pled a claim for equitable tolling. We disagree. Although filing suit from another country that uses a different language is difficult, that difficulty does not establish any entitlement to equitable tolling. The Papas allege nothing in support of their implied argument that they needed to be in the country to file a lawsuit. The district court did not err when it concluded that the Papas had not sufficiently pled a claim for equitable tolling.[28] Accordingly we affirm the dismissal of the FTCA claims as untimely. We also affirm the district court's decision to deny amendment as futile.

## C. ATCA Claims

The district court dismissed all of the appellants' claims under the ATCA[29] on two grounds. First, the district court declared the claims statutorily barred. Second, the district court held that the ATCA created federal jurisdiction, but did not provide a cause of action. We reverse on both grounds and remand.

The ATCA specifies no statute of limitations. In such situations, courts apply the limitations period provided by the jurisdiction in which they sit unless "a rule

---

§ 1983 cases where the defendant's subjective intent is an element of the plaintiff's constitutional tort" (internal citation omitted)).

24. *Id.* at 452.

25. *See* 28 U.S.C. § 2401(b).

26. *Brown v. United States,* 353 F.2d 578, 579 (9th Cir.1965).

27. 28 U.S.C. § 2401(b).

28. *See Alvarez–Machain v. United States,* 107 F.3d 696, 701 (9th Cir.1996).

29. 28 U.S.C. § 1350.

from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking." [30]

One district court in this circuit held, in 1987, that the closest federal analogy to the ATCA was 42 U.S.C. § 1983 which, in turn, borrows the state statute of limitations.[31] At that time, the court was probably correct. In 1992, however, Congress passed the Torture Victim Protection Act of 1991 (TVPA).[32] The courts that have considered the limitations period applicable to the ATCA since the passage of the TVPA have either left open the question of whether the TVPA provides the closest federal analogy or have adopted its ten-year statute of limitations.[33] The Ninth Circuit has thus far declined to rule on the issue.[34] We are squarely faced with the issue here, and we decide that the statute of limitations applicable to the ATCA is that provided by the TVPA.

The TVPA, like the ATCA, furthers the protection of human rights and helps "carry out obligations of the United States under the United Nations Charter and other international agreements pertaining to the protection of human rights." [35] Moreover, it employs a similar mechanism for carrying out these goals: civil actions. The provisions of the TVPA were added to the ATCA, further indicating the close relationship between the two statutes. All these factors point towards borrowing the TVPA's statute of limitations for the ATCA.[36] In addition, the realities of litigating claims brought under the ATCA, and the federal interest in providing a remedy, also point towards adopting a uniform—and a generous—statute of limitations.[37] The nature of the violations suffered by those the ATCA, like the TVPA, was designed to protect will tend to preclude filings in United States courts within a short time. Accordingly, we reject the

**30.** *North Star Steel Co. v. Thomas*, 515 U.S. 29, 35, 115 S.Ct. 1927, 132 L.Ed.2d 27 (1995) (internal quotations and citations omitted).

**31.** *Forti v. Suarez–Mason*, 672 F.Supp. 1531, 1548 (N.D.Cal.1987). We note that tolling provisions of the state are generally also borrowed. *See Hilao v. Estate of Marcos*, 103 F.3d 767, 773 (9th Cir.1996). Thus, even if the state statute of limitations were to apply, California law would have tolled the limitations period during the minority of the youngest Papas.

**32.** Pub.L. No. 102–256, 106 Stat. 73 (1992) (codified at 28 U.S.C. § 1350).

**33.** *See In re World War II Era Japanese Forced Labor Litigation*, 164 F.Supp.2d 1160, 1180–81 (N.D.Cal.2001) (applying TVPA's ten-year limitations period to claims under the ATCA); *Cabiri v. Assasie–Gyimah*, 921 F.Supp. 1189, 1194, 1196 (S.D.N.Y.1996) (applying the TVPA's ten-year limitations period to claims under the ATCA despite the fact that the claim accrued prior to the TVPA's passage); *Xuncax*

*v. Gramajo*, 886 F.Supp. 162, 192–93 (D.Mass.1995) (leaving open the question of whether the limitations period provided by Massachusetts law or by the TVPA would apply to ATCA claims); *Hilao*, 103 F.3d at 773(declining to decide whether TVPA limitations period applied); *Doe v. Unocal Corp.*, 963 F.Supp. 880, 896–97 (C.D.Cal.1997) (same).

**34.** *See, e.g., Hilao*, 103 F.3d at 773(declining to decide among, but discussing, the possibilities available for statutes of limitations, including the limitations period provided by state law, by the laws of the country in which the alleged violation occurred, and by the "most closely analogous federal statute of limitations," which the plaintiffs in that case argued was the TVPA).

**35.** Pub.L. No. 102–256, 106 Stat. 73.

**36.** *See North Star Steel Co.*, 515 U.S. at 35, 115 S.Ct. 1927.

**37.** *Id.*

district court's adoption of the California statute of limitations and adopt the ten-year statute of limitations provided by the TVPA instead. Applying that statute, the Papas' claims are timely.

■ We also reject the district court's second reason for dismissing the Papas' ATCA claims. Relying on a case from the Southern District of Texas, a case the Appellees cite before this court as well, the district court concluded that the ATCA provides no cause of action, but merely confers jurisdiction upon the federal courts. Relying on this conclusion, the court reasoned that plaintiffs must cite a statute or treaty that creates a cause of action in order to succeed on an ATCA claim.[38] Similar reasoning was rejected by the Ninth Circuit in 1994.[39] Certainly, plaintiffs must allege a violation of "specific, universal, and obligatory" international norms as part of an ATCA claim.[40] They need not, however, cite a portion of a specific treaty or another United States statute in order to establish a cause of action, as the district court required.[41] We remand to the district court in order to allow it to apply the applicable standard.

### D. *FOIA Claims*

In 1997, the INS responded to the Papas' FOIA request, declaring that they had conducted a search for information pertaining to Mr. Papa's death and had found nothing. After the Papas filed the instant case, however, the INS located numerous documents. The first set, composed of over 600 pages, was produced on May 7, 1999; a second set, in mid-September 1999.

■ Defendants correctly cite authority for the proposition that the production of all nonexempt material, "however belatedly," moots FOIA claims.[42] The problem for defendants is that they have cited nothing in the record certifying that all the records in existence that must be produced have been produced. The affidavits on which defendants rely merely state that certain documents were produced; they do not detail the methods used to search for documents and never state that all documents have been produced. Affidavits justify summary judgment only when they are "relatively detailed and non-conclusory."[43] The affidavits on which defendants rely are neither. Accordingly, we reverse and remand.

### CONCLUSION

We reverse the district court's dismissal of the *Bivens* claim for due process violations during Mr. Papa's detention alleged by the four youngest appellants, Wesleano, Kerly, Luciene, and Cirlene Papa. We conclude that the four youngest appellants are entitled to amend the claim. Accordingly, we reverse and remand for further proceedings. We also reverse and remand as to all of appellants' ATCA claims as well as their FOIA claims. Before the court may dismiss the FOIA claims, the defendants must properly certify their production, especially in light of the history of the Papas'

---

38. *See Jones v. Petty Ray Geophysical Geosource, Inc.,* 722 F.Supp. 343, 348 (S.D.Tex. 1989).

39. *See In re Estate of Ferdinand Marcos, Human Rights Litigation,* 25 F.3d 1467, 1474–75 (9th Cir.1994) (rejecting contention that ATCA provides only jurisdiction, similar to that provided by 28 U.S.C. § 1331).

40. *Id.* at 1475.

41. *See id.*

42. *Perry v. Block,* 684 F.2d 121, 125 (D.C.Cir. 1982); 5 U.S.C. § 552.

43. *Perry,* 684 F.2d at 126 (internal quotations and citations omitted).

FOIA request. As to all other claims, we affirm the district court's decision.

REVERSED and REMANDED in part, and AFFIRMED in part. Costs shall be taxed against the appellees.