[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 02-14427

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 28, 2005
THOMAS K. KAHN
CLERK

D.C. Docket No. 99-08364 CV-DTKH

JUAN ROMAGOZA ARCE,
NERIS GONZALEZ,
and CARLOS MAURICIO,

                                                    Plaintiffs-Appellees,

versus

JOSE GUILLERMO GARCIA,
an individual, and
CARLOS EUGENIO VIDES-CASANOVA,
an individual,

                                                    Defendants-Appellants.

_____

Appeal from the United States District Court
Southern District of Florida

_____

(February 28, 2005)

Before TJOFLAT and CARNES, Circuit Judges, and CONWAY*, District Judge.

_____

  * Honorable Anne C. Conway, United States District Judge for the Middle District of
Florida, sitting by designation.

TJOFLAT, Circuit Judge:

I.

The three plaintiffs in this case are Salvadoran refugees who claim that they were tortured by soldiers in El Salvador during the course of a campaign of human-rights violations by the Salvadoran military from 1979 to 1983.

The first plaintiff, Juan Romagoza Arce, claims that he was kidnaped by government soldiers on or about December 12, 1980 and that he was tortured until January 5, 1981, when he was released. Specifically, Arce alleges that he was shot in the foot and hand, hung from ropes made of sharp material, forced to undergo electric shocks, pushed to the edge of the open door of a helicopter with threats that he would be thrown out, and severely beaten for failing to answer questions to his captor's satisfaction. Arce arrived in the United States in 1983.

The second plaintiff, Neris Gonzalez, claims that she was abducted by Salvadoran soldiers on December 26, 1979 and detained for two weeks. Gonzalez alleges that she was burned with cigarettes, stuck with needles under her fingernails, asphyxiated with a powder-filled rubber mask while she received electric shocks, repeatedly raped, had a bed frame balanced on her stomach when she was eight months pregnant, forced to drink the blood from an open wound in a man's stomach, and severely beaten. She arrived in the United States in 1997.

2

The third plaintiff, Carlos Mauricio, claims that he was kidnaped on June 13, 1983 and held for one and a half weeks at the National Police Headquarters. Mauricio alleges that he was interrogated while he had his hands strung up behind his back. He also claims that during his interrogation he was severely beaten with a metal bar covered with rubber. It appears that he arrived in the United States in 1983.

The defendants in this case are Jose Garcia, the minister of defense of El Salvador from 1979 to 1983, and Carlos Vides-Casanova (Casanova), the director-general of El Salvador's National Guard during the same period. Both defendants moved to the United States in August 1989 and have since been residing in this country as permanent residents.

On February 22, 2000, the plaintiffs brought this action against Garcia and Casanova in the United States District Court for the Southern District of Florida. Their complaint sought relief based on two general theories.[1] One count relies on the Torture Victim Protection Act of 1991 (TVPA), 28 U.S.C. § 1350 note (2000).

---

[1] The plaintiffs describe the defendants' acts with different terms, ranging from crimes against humanity to arbitrary detention, and from torture to cruel, inhuman, and degrading treatment. We focus on the gravamen on the plaintiffs' claims and not the different ways in which they are styled.

The others rely on the Alien Tort Claims Act (ATCA), 28 U.S.C. § 1350 (2000), and its connection with corresponding causes of action.

The defendants filed an answer asserting several defenses, including lack of subject-matter jurisdiction and the running of the statute of limitations. On April 27, 2001, the defendants filed a "motion for judgment on the pleadings" on statute-of-limitations grounds, contending that the acts of which the plaintiffs complained occurred more than ten years prior to the lawsuit. In a sparse one-page order, the district court rejected this motion, holding that the plaintiffs' claims "were [equitably] tolled at least until the Salvadoran civil war ended on January 16, 1992, which is the date the Salvadoran Peace Accords were negotiated under the auspices of the United Nations, and the independence of the judiciary was restored in El Salvador." The defendants immediately filed a "motion for amendment of judgment," arguing that the court should not have tolled the statute of limitations because the defendants were subject to service of process for more than ten years following the last alleged act of torture. The court rejected this motion without explanation.

On October 23, 2001, the defendants filed a "motion to dismiss [for lack of] subject matter jurisdiction." They argued that the plaintiffs had failed to state a cause of action under the ATCA. Three days later, they filed a motion for

4

"judgment on the pleadings [for] failure to state a claim," raising similar arguments. At that time, they also filed a "motion to dismiss [due to the] statute of limitations" and a "motion for judgment on the pleadings [due to the] statute of limitations," which were virtually identical to each other. The plaintiffs responded that these motions were redundant and untimely. The district court issued an omnibus order denying, without explanation, all of the motions except the last two.

At trial, the jury awarded the three plaintiffs $54.6 million in compensatory and punitive damages. The defendants filed a motion styled "Motion for Judgment as a Matter of Law and/or Motion for New Trial/Statute of Limitations," arguing that the verdicts should be overturned because the plaintiffs' claims were time-barred. The court denied this motion without written explanation. The defendants now appeal, contending that the district court should have dismissed the plaintiffs' ATCA and TVPA claims under the relevant statutes of limitations.

This opinion focuses on two issues. First, in Part II, we discuss whether we have subject-matter jurisdiction. Second, in Part III, we discuss whether the plaintiffs asserted a cause of action within the relevant statute of limitations. We conclude that although we have jurisdiction, the plaintiffs failed to assert a cause

5

of action within the statute of limitations.  Accordingly, we reverse the district

court's judgment.

II.

As stated above, the plaintiffs bring claims based on the TVPA and the

ATCA.  Before we evaluate these claims, we must determine whether we have

jurisdiction because courts have a duty to consider their subject-matter jurisdiction

sua sponte.  TVA v. Whitman, 336 F.3d 1236, 1257 n.34 (11th Cir. 2003).

One potential basis for jurisdiction is federal-question jurisdiction under

section 1331:  "The district courts shall have original jurisdiction of all civil

actions arising under the Constitution, laws, or treaties of the United States."  28

U.S.C. § 1331 (2000).  Here, federal-question jurisdiction applies because the

plaintiffs' first claim for relief is brought under the TVPA, which provides a

federal cause of action against "[a]n individual who, under actual or apparent

authority, or color of law, of any foreign nation" subjects another to torture or

extrajudicial killing.  28 U.S.C. § 1350 note (2000).

In turn, this federal-question jurisdiction predicated upon the TVPA also

provides jurisdiction for the remainder of the plaintiffs' claims—including those

causes of action relying on the ATCA—based on the same underlying acts of

torture under principles of supplemental jurisdiction.  See 28 U.S.C. § 1367(a)

6

(2000) (giving district courts "supplemental jurisdiction over all claims . . . that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution"). Accordingly, this court has jurisdiction to hear all of the plaintiffs claims.[2] Having established jurisdiction, we will now address whether the plaintiffs pursued their claims too late.

III.

In this Part, we focus on the statute of limitations. Part III.A defines the relevant statute of limitations for both the ATCA and the TVPA. Part III.B addresses whether the ATCA and the TVPA are potentially subject to equitable tolling, which is the "doctrine under which plaintiffs may sue after the statutory time period has expired if they have been prevented from doing so due to inequitable circumstances." Ellis v. Gen. Motors Acceptance Corp., 160 F.3d 703, 706 (11th Cir. 1998) (citations omitted). Part III.C applies these rules and concludes that the plaintiffs failed to present sufficient evidence to qualify for equitable tolling.

---

[2] The conclusion that we have federal-question jurisdiction says nothing about other potential bases of jurisdiction, such as jurisdiction under the ATCA for torts in violation of the law of nations. 28 U.S.C. § 1350 (2000); see also Sosa v. Alvarez-Machain, __ U.S. __, 124 S. Ct. 2739, 2754, 159 L. Ed. 2d 718 (2004) (stressing that the ATCA is jurisdictional only).

A.

The TVPA contains an express ten-year statute of limitations. 28 U.S.C. § 1350, historical and statutory notes § 2(c) ("No action shall be maintained under this section unless it is commenced within 10 years after the cause of action arose.").

The ATCA, however, does not contain an express statute of limitations. When confronted with a federal statute that does not contain a limitations period, we look to the statute's closest state-law analogue to determine the limitations period that the statute implicitly contains. See Reed v. United Transp. Union, 488 U.S. 319, 324, 109 S. Ct. 621, 625, 102 L. Ed. 2d 665 (1989) (noting the "general rule that statutes of limitation are to be borrowed from state law"). However, "when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking, we have not hesitated to turn away from state law." DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 172, 103 S. Ct. 2281, 2294, 76 L. Ed. 2d 476 (1983).

Several courts have held that the ATCA's implicit limitations period should be based on the TVPA because the statutes—and the policies behind the

8

statutes—are similar.  E.g., Papa v. United States, 281 F.3d 1004, 1012-13 (9th

Cir. 2002); Doe v. Islamic Salvation Front, 257 F. Supp. 2d 115, 119 (D.D.C.

2003); Estate of Cabello v. Fernandez-Larios, 157 F. Supp. 2d 1345, 1363 (S.D.

Fla. 2001); Cabiri v. Assasie-Gyimah, 921 F. Supp. 1189, 1194-96 (S.D.N.Y.

1996).  These courts point to many similarities between the statutes: purpose

(protecting human rights), mechanism (civil suits to protect human rights), and

location within the United States Code (provisions of the TVPA were added to the

ATCA).  See Papa, 281 F.3d at 1012 (chronicling these and other reasons).  We

join this consensus and adopt the TVPA's ten-year statute of limitations for claims

brought under the ATCA.

In sum, the ATCA and the TVPA share the same ten-year statute of

limitations.  Accordingly, my analysis of the statute of limitations under the ATCA

and the TVPA is the same because the underlying statute of limitations is the

same.

B.

As stated in Part III.A, the TVPA and the ATCA contain the same ten-year

statute of limitations.  The general rule is that statute of limitations are subject to

equitable tolling.  See United States v. Locke, 471 U.S. 84, 94 n.10, 105 S. Ct.

1785, 1792 n.10, 85 L. Ed. 2d 64 (1985) ("Statutory filing deadlines are generally

9

subject to the defenses of waiver, estoppel, and equitable tolling."); <u>Young v. United States</u>, 535 U.S. 43, 49, 122 S. Ct. 1036, 1040, 152 L. Ed. 2d 79 (2002) ("It is hornbook law that limitations periods are customarily subject to equitable tolling unless tolling would be inconsistent with the text of the relevant statute." (quotation marks and citations omitted)).

Here, there is nothing in the text, structure, or legislative history of the TVPA that changes this general rule. To the contrary, the TVPA's legislative history demonstrates that Congress affirmatively intended that equitable tolling be available. For example, the House Report accompanying the TVPA states that "[i]n some instances, such as where a defendant fraudulently conceals his or her identification or whereabouts from the claimant, equitable tolling remedies may apply to preserve a claimant's rights." H.R. Rep. No. 102-367(I), at 5 (1991), <u>reprinted in</u> 1992 U.S.C.C.A.N. 84, 88. The Senate Report similarly declares:

> The statute of limitations should be tolled during the time the defendant was absent from the United States or from any jurisdiction in which the same or a similar action arising from the same facts may be maintained by the plaintiff, provided that the remedy in that jurisdiction is adequate and available. Excluded also from calculation of the statute of limitations would be the period in which the plaintiff is imprisoned or otherwise incapacitated. It should also be tolled where the defendant has concealed his or her whereabouts or the plaintiff has been unable to discover the identity of the offender.

S. Rep. No. 102-249, at 11 (1991) (footnotes omitted).

Because of the general rule in favor of equitable tolling, as well as the unambiguous legislative history, the TVPA's—and accordingly the ATCA's—statute of limitations is potentially subject to equitable tolling. Other courts have reached this same conclusion. E.g., Estate of Cabello, 157 F. Supp. 2d at 1368.

## C.

The district court held that the plaintiffs were entitled to equitable tolling until the Salvadoran civil war ended on January 16, 1992. We review these types of equitable-tolling holdings de novo.[3] Drew v. Dep't of Corr., 297 F.3d 1278, 1283 (11th Cir. 2002); Helton v. Sec'y for the Dep't of Corr., 259 F.3d 1310, 1312 (11th Cir. 2001).

Equitable tolling is appropriate only in "extraordinary circumstances." Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999). To illustrate, "extraordinary circumstances" can be those "that are both beyond [the plaintiff's] control and unavoidable even with diligence." Id. For more examples, equitable tolling may be appropriate if a "claimant has received inadequate notice; or where

---

[3] As noted earlier, the defendants repeatedly moved both for dismissal and for judgment as a matter of law on statute-of-limitations grounds. There is thus no basis for the plaintiffs' argument that the defendants failed to preserve their statute-of-limitations defenses. We therefore reject the plaintiffs' contention that we must review some of the defendants' arguments under a "plain error" standard.

a motion for appointment of counsel is pending and equity would justify tolling the statutory period until the motion is acted upon; or where the court has led the plaintiff to believe that she had done everything required of her." Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 151, 104 S. Ct. 1723, 1725-26, 80 L. Ed. 2d 196 (1984) (citations omitted).

The most common example of an extraordinary circumstance is when the defendant's misconduct induced the plaintiff into allowing the filing deadline to pass. See Irwin v. Dep't of Veteran Affairs, 498 U.S. 89, 96, 111 S. Ct. 453, 458, 112 L. Ed. 2d 435 (1990) (stating that equitable tolling applies when "the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass" (emphasis added)); Baldwin City Welcome Ctr., 466 U.S. at 157, 104 S. Ct. at 1726 (permitting tolling if "affirmative misconduct on the part of a defendant lulled the plaintiff into inaction"); Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) ("We recently explained that equitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights."). Indeed, without defendant misconduct, courts have "generally been much less forgiving in receiving late

12

filings where the claimant failed to exercise due diligence in preserving his legal rights." Irwin, 498 U.S. at 96, 111 S. Ct. at 458; Wakefield v. R.R. Ret. Bd., 131 F.3d 967, 969 (11th Cir. 1997). Thus, there are many types of extraordinary circumstances, but they often involve defendant misconduct.

To qualify for equitable tolling, "[t]he burden is on the plaintiff." Justice v. United States, 6 F.3d 1474, 1479 (11th Cir. 1993); accord Bost v. Fed. Express Corp., 372 F.3d 1233, 1242 (11th Cir. 2004) ("[T]he plaintiffs must establish that tolling is warranted."). The plaintiff bears this burden because equitable tolling is an exception to the rule of the statute of limitations, not the rule itself. Pac. Harbor Capital, Inc. v. Barnett Bank, N.A., 252 F.3d 1246, 1252 (11th Cir. 2001); see also Irwin. 498 U.S. at 96, 111 S. Ct. at 457 ("Federal courts have typically extended equitable relief only sparingly."). Placing this burden on the plaintiff serves important social functions: "Statutes of limitations are not arbitrary obstacles to the vindication of just claims, and therefore, should not be given grudging application. They protect important social interests in certainty, accuracy, and repose." Cada v. Baxter Healthcare Corp., 920 F.2d 446, 452-53

(7th Cir. 1990). Here, the plaintiffs seek to satisfy their burden by proving that their circumstances are extraordinary in four ways.[4] We consider each in turn.

First, the plaintiffs argue that the civil war in El Salvador, combined with the power of the Salvadoran military, qualifies as an "extraordinary circumstance." The plaintiffs make this argument by citing several decisions, including Hilao v. Estate of Marcos, 103 F.3d 767, 773 (9th Cir. 1996), Estate of Cabello, 157 F. Supp. 2d at 1368, and Doe v. Unocal, 963 F. Supp. 880, 896-97 (C.D. Cal. 1997). However, these cases, and the plaintiffs' arguments, are insufficient to toll the statute of limitations for a combination of reasons.

Initially, the situation in El Salvador seems irrelevant because most of the plaintiffs and all of the defendants were in the United States in the 1980s. Moreover, the plaintiffs fail to muster sufficient evidence of the defendants' involvement.[5] Instead, the plaintiffs focus on the ambient situation in El Salvador.

---

[4] The four-fold division is ours. We subdivided the plaintiffs' arguments to give each argument due consideration. Nevertheless, we consider all of the circumstances. So while we discuss each particular argument separately, we consider the plaintiffs' arguments as a whole. As a result, each reason for rejecting a particular argument applies to all of the plaintiffs' other arguments.

[5] We recognize that defendant misconduct is not formally or always required for the application of equitable tolling. E.g., Haekal v. Refco, Inc., 198 F.3d 37, 43 (2d Cir. 1999); Hentosh v. Herman M. Finch Univ. of Health Servs./The Chicago Med. Sch., 167 F.3d 1170, 1174 (7th Cir. 1999); Browing v. AT&T Paradyne, 120 F.3d 222, 226 (11th Cir. 1997). Nevertheless, we look at this factor in combination with other factors. The resulting totality of circumstances suggests that the plaintiffs have failed to marshal sufficient evidence to justify equitable tolling.

But given the particular facts in this case, the fact that other people or entities may have hindered the plaintiff is by itself insufficient to trigger equitable tolling. Therefore, the lack of cooperation from the Salvadoran government from 1983 (when the defendants left office) to 2000 (when the plaintiffs filed suit) is not sufficient to toll the statute of limitations. Cf. Bodner v. Banque Paribas, 114 F. Supp. 2d 117, 135 (E.D.N.Y. 2000) (holding that "[t]here is no reason that plaintiffs should be denied a forum for addressing their claims as a result of deceitful practices by the defendants which have kept them from knowing or proving the extent of these claims") (emphasis added); Iwanowa v. Ford Motor Co., 67 F. Supp. 2d 424, 467 (D.N.J. 1999) ("To avoid dismissal, a complaint asserting equitable tolling must contain particularized allegations that the defendant actively misled the plaintiff." (emphasis added) (quotation marks and citation omitted)).

Finally, we are not persuaded by the cases cited by the plaintiffs. None is binding on this court. More importantly, none stands for the premise that domestic turmoil alone constitutes "extraordinary circumstances." Take Rosner v. United States, 231 F. Supp. 2d 1202 (S.D. Fla. 2002), for example. In that case, Hungarian Jews sought to have the Federal Tort Claims Act's statute of limitations tolled so that they could seek the return of property seized by the federal

15

government during World War II.  They argued in part that equitable tolling was justified due to "the brutal reality of the Holocaust."  Id. at 1208.  While the district court granted their request, the core of its decision rested on the fact that the plaintiffs "were induced or tricked by the Government's misconduct into allowing the filing deadline to pass."  Id. at 1209 (emphasis added); see also Cabello Barrueto v. Fernandez Larios, 205 F. Supp. 2d 1325, 1331 (S.D. Fla. 2002) (tolling that statute of limitations, not because of General Pinochet's death squads, but rather because "the pre-1990 Chilean government's concealment of the decedent's burial location and the accurate cause of death prevented Plaintiffs from bringing this action until 1990").  While we recognize that some Ninth Circuit cases have been more lenient, see, e.g., Hilao, 103 F.3d at 773, we decline to follow their lead.

Second, the plaintiffs argue that they are entitled to equitable tolling because the defendants "engaged in a pattern of denial about their personal responsibility for human rights abuses in El Salvador."  Given the totality of circumstances, we disagree.

To begin, denial does not rise to the level of misconduct usually required for equitable tolling.  As stated above, courts usually require some affirmative misconduct, such as deliberate concealment.  See, e.g., Estate of Cabello, 157 F.

16

Supp. 2d at 1368 ("Equitable tolling of the TVPA is appropriate in this case because Chilean military authorities deliberately concealed the decedent's burial location from Plaintiffs . . . ."); <u>Rosner</u>, 231 F. Supp. 2d at 1209 (tolling the statute of limitations because the plaintiffs "were induced or tricked by the Government's misconduct into allowing the filing deadline to pass").  Moreover, it is common for people to deny wrongdoing, particularly when they are not under oath or when they have no duty to disclose.  Indeed, to accept the plaintiffs' argument would be to impose upon litigants an affirmative duty to disclose information before litigation begins.

The plaintiffs finally fail to show how these denials prevented them from proving their claims.  Instead, the plaintiffs admit in their briefs that their claims did not rest on much "direct" evidence beyond their own testimony, but was instead based on testimony of

> a medical expert, evidence from diplomatic observers who met frequently with defendants (including Robert White, U.S. Ambassador to El Salvador from 1979-80), political, legal, and military experts, human rights workers who personally witnesses [sic] or monitored the abuses of the Salvadorean military, and an investigator from the U.N.-sponsored Commission on the Truth for El Salvador (the U.N. "Truth Commission").  Plaintiffs also introduced into evidence numerous declassified cables of the U.S. State Department on political and military topics pertaining to El Salvador.

17

"The essence of the doctrine of equitable tolling of a statute of limitations is that a statute of limitations does not run against a plaintiff who is unaware of his cause of action." Bodner, 114 F. Supp. 2d at 135 (citing Long v. Abbott Mortgage Corp., 459 F. Supp. 108, 113 (D. Conn. 1978)). Here, the plaintiffs were aware of their own experiences, and the lion's share of their other evidence is from the testimony of experts. It is therefore unclear how the defendants hindered the plaintiffs from accessing any of this evidence. In sum, the defendants' mere denials are insufficient to warrant equitable tolling. See e.g., Deutsch v. Turner Corp., 324 F.3d 692, 718 (9th Cir. 2003) (upholding the district court's decision that an allegation "that the defendants had kept the plaintiffs ignorant of essential facts in the defendants' possession" was "insufficient to trigger tolling").

Third, Plaintiff Neriz Gonzalez argues that the statute of limitations should be equitably tolled for her until 1997, when she left El Salvador and arrived in the United States. This does not constitute an extraordinary circumstance, in large part because a plaintiff's residency is largely within her control. Indeed, nothing in the record suggests that anyone prevented Gonzalez from coming to the United States earlier, as her two co-plaintiffs did in 1983. Furthermore, although it would have involved logistical difficulties, it is quite possible that Gonzalez could have commenced her suit in a United States court despite being in El Salvador. Indeed,

18

from El Salvador she could have contacted an attorney in the United States, any of the public-interest organizations involved in this litigation, other nongovernmental organizations, or other entities.

Gonzalez counters by arguing that Salvadoran courts were unavailable to hear her case. This argument misses the point: the fact that a foreign country's courts were unavailable does not explain why a suit could not have been brought in this country. See In re World War II Era Japanese Forced Labor Litig., 164 F. Supp. 2d 1160, 1181 (N.D. Cal. 2001) ("[The plaintiff's] reference to the Japanese government's alleged suppression of similar claims brought by Korean forced laborers in Japan shortly after the war does not explain why the same claims could not have been alleged in a United States Court."). Indeed, even the cases that Gonzalez cites speak to the availability of a United States court, not a foreign court. See, e.g., Hanger v. Abbott, 73 U.S. (6 Wall.) 532, 541, 18 L. Ed. 939 (1868) (tolling a statute of limitations for a diversity-based suit in federal district court because the courts were closed during the United States Civil War).[6]

---

[6] The Ninth Circuit has reached the opposite conclusion. See Hilao, 103 F.3d at 773 (equitably tolling the statute of limitations during years in which the writ of habeas corpus was suspended in the Philippines and Philippine courts were unavailable). We do not follow the Ninth Circuit's lead because there are several factual differences between Hilao and our case, and because the Ninth Circuit's lenient approach toward equitable tolling softens the rigors of what constitutes extraordinary circumstances.

Fourth, the plaintiffs argue that the statute of limitations should be equitably tolled until the defendants took up residency in the United States. The plaintiffs make this argument by citing the legislative history of the TVPA and one case on point, Hilao. The legislative history suggests that tolling could apply in many circumstances, including if "the defendant was absent from the United States or from any jurisdiction in which the same or a similar action arising from the same facts may be maintained by the plaintiff, provided that the remedy in that jurisdiction is adequate and available." S. Rep. No. 102-249 at 11 (1991). Preceding this statement, however, are reminders that the Senate's examples are "[i]llustrative, but not exhaustive," and that courts must consider "all equitable tolling principles." Id. at 10-11. These tolling principles include the affirmative role of the court to consider the equitable circumstances. Cf. Baldwin County Welcome Ctr., 466 U.S. at 151-52, 104 S. Ct. 1725-26 (discussing different types of cases and factors that courts consider in deciding equitable-tolling cases). It is not clear from this history that a defendant's absence from a jurisdiction is alone sufficient to toll the statute. Moreover, the legislative history does not dispose of our consideration; rather, it provides guidance. Our consideration is also guided by our case law, which stresses the role of the plaintiff's diligence in pursuing a cause of action and the defendant's efforts to thwart that diligence. See generally

20

<u>Drew</u>, 297 F.3d at 1286-87. Here, the defendant's absence is not enough to toll the statute, especially given the lack of affirmative misconduct from the defendants, the lack of diligence by the plaintiffs, and the litany of other factors discussed in this subpart.

The plaintiffs cite <u>Hilao</u> to support their argument. It is true that <u>Hilao</u> cites the legislative history quoted above, but it is not true that <u>Hilao</u> stands for the monolithic proposition that the defendant's absence is alone sufficient to require tolling. Instead, <u>Hilao</u> focuses on a confluence of factors, such as a constitutional amendment granting the defendant "immunity from suit during his term in office," "fear of reprisals," and other factors. Moreover, the plaintiffs do not argue that a court would not have equitably tolled the statute if their claims had been timely filed (even if the defendants could not have been served), an option that plaintiffs should have pursued. Thus, the facts in this case, including the defendants' absence, do not constitute an extraordinary circumstance that warrants equitable tolling. Rather, the facts are more similar to cases in which the plaintiffs failed to diligently exercise their rights. <u>See</u> <u>e.g.</u>, <u>id</u>. at 1286-87 ("In order to be entitled to the benefit of equitable tolling, a petitioner must act with diligence, and the untimeliness of the filing must be the result of circumstances beyond his control."); <u>Sandvik</u>, 177 F.3d at 1272 (holding that a late-filed motion did not

constitute an extraordinary circumstances because "[w]hile the inefficiencies of the United States Postal Service may be a circumstance beyond [the plaintiff's] control, the problem was one that . . . could have avoided by mailing the motion earlier or by using a private delivery service or even a private courier").

After dismissing each of the plaintiffs' arguments for equitable tolling, we conclude by noting the dangerous precedent that this case could set if those arguments were accepted. From a United States perspective, there are many countries that oppress their citizens today, and many countries that have oppressed their citizens in decades and centuries past. A lenient approach toward equitable tolling would mean that United States courts would hear claims dating back decades, if not centuries. In enacting a statute of limitations for the TVPA, Congress surely did not intend to permit such trial-by-excavation, at least not absent extraordinary circumstances. Courts would wind up with cases that are based not on witnesses with personal knowledge, but instead on the generalized testimony of human-rights workers, diplomats, and assorted experts. Much of the evidence would pertain not to the particular incidents at issue, but to the illegitimacy of an overall regime. Nevertheless, the plaintiffs' failure in this case to qualify for equitable tolling is not a death knell for future claimants. Instead, it

is merely a recognition that "extraordinary circumstances" is reserved for extraordinary facts, and not for a plaintiff's failure to timely assert her rights.

For these reasons, we conclude that the plaintiffs failed to satisfy the requirements for equitable tolling, that their claims were time-barred, and that the jury verdict should be vacated and the plaintiffs' claims dismissed.

The district court's judgement is

REVERSED.