[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 26, 2005
THOMAS K. KAHN
CLERK

No. 04-15435

D. C. Docket No. 03-00097 CV-97-RH

GARY LAWRENCE,

Petitioner-Appellant,

versus

STATE OF FLORIDA,

Respondent-Appellee.

Appeal from the United States District Court
for the Northern District of Florida

**(August 26, 2005)**

Before DUBINA, BLACK and CARNES, Circuit Judges.

DUBINA, Circuit Judge:

This is a death penalty case in which the Certificate of Appealability

("COA") presents only one issue for our review: whether the one-year limitations

period of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(d)(1), bars petitioner Gary Lawrence's habeas petition. After reviewing the record, reading the parties' briefs, and having the benefit of oral argument, we agree with the district court that Lawrence's petition was untimely. Accordingly, we affirm the district court's order.

## BACKGROUND

In March 1995, a Florida jury convicted Lawrence of one count each of premeditated murder in the first degree, conspiracy to commit murder, petit theft, and grand theft of a motor vehicle. The jury recommended a death sentence based on the murder conviction, and the trial court followed the jury's recommendation and imposed a death sentence. The Florida Supreme Court summarized the facts of the murder as follows:

> Shortly after Gary and Brenda Lawrence were married, they separated, and another man, Michael Finken, moved in with Brenda and her two daughters, Stephanie and Kimberly Pitts, and Stephanie's friend, Rachel Matin. On the day of the murder, July 28, 1994, Gary and Michael drove Brenda to work and then drank beer at a friend's house. Later, Gary and Michael picked Brenda up and the three returned to the friend's house where they drank more beer. After the three returned to Brenda's apartment, Gary and Michael argued and Gary hit Michael when he learned that Michael had been sleeping with Brenda. Gary and Michael seemed to resolve their differences, and Michael fell asleep on the couch. Gary and Brenda conversed, and Brenda went through the house collecting weapons – including a pipe and a baseball bat. Gary and Brenda told Kimberly and Rachel

2

that they were "going to knock off Mike." Gary told Kimberly to "stay in your bedroom no matter what you hear."

The trial court described what happened after Gary and Brenda spoke to the girls:

Thereafter, the two girls heard what they described as a pounding sound. At one point, Rachel Matin stated that she heard the victim say, "stop it, if you stop, I'll leave." She stated that she heard that statement several times. Kimberly Pitts stated she heard the victim say, "please don't hit me, I'm already bleeding." The victim's pleas, however, were met with more pounding. Once the pounding stopped, the girls were required to assist in the clean up and described to the jury what they observed. Kimberly stated that much of the victim's right side of his face was missing and his chin was knocked over to his ear. Rachel Matin stated that there was no skin left on the victim's face and part of his nose was missing. Apparently the victim was still alive. Kimberly observed her mother coming out of the kitchen area with what appeared to be a dagger and then, although not seeing the dagger in her hand at the time, observed her mother make a stabbing motion toward the victim with something in her hand.

It was at that time when Brenda Lawrence requested that the girls obtain the assistance of Chris Wetherbee. Upon his entrance into the home, Chris Wetherbee observed the victim's head being caved in, blood all over, the victim's eyeball protruding approximately three inches and a mop handle shoved into the victim's throat. Wetherbee asked Gary Lawrence, "what's going on?" At which time the Defendant responded by pulling out the mop handle and kicking the victim and making the statement "this is what's going on." Immediately after removing the mop handle from the victim's throat, Wetherbee heard the victim give approximately three or four ragged breaths at

3

which time the victim thereafter stopped breathing and apparently expired. The Defendant, Gary Lawrence, told Wetherbee that he had beat him with a pipe until it bent and then beat him with a baseball bat.

Chris Wetherbee summarized the victim's state: "And [he] looked like something off of one of the real good horror movies." Gary and Brenda then removed a small amount of money from Michael's pockets, wrapped the body in a shower curtain and placed the body in Michael's car, and Gary drove to a secluded area where he set the body afire. When Gary returned home, he and Brenda danced.

*Lawrence v. State*, 698 So. 2d 1219, 1220 (Fla. 1997).

The Florida Supreme Court affirmed Lawrence's conviction and sentence. *Id.* The United States Supreme Court denied certiorari review on January 20, 1998. *Lawrence v. Florida*, 522 U.S. 1080, 118 S. Ct. 863 (1998). Lawrence sought state post-conviction relief, and the trial court denied the petition on October 11, 2000. The Florida Supreme Court affirmed the trial court's denial of state post-conviction relief. *Lawrence v. State*, 831 So. 2d 121 (Fla. 2002). The United States Supreme Court denied certiorari review of the Florida Supreme Court's denial of post-conviction relief. *Lawrence v. Florida*, 538 U.S. 926, 123 S. Ct. 1575 (2003).

Lawrence then moved to federal court seeking habeas relief pursuant to 28 U.S.C. § 2254. The filing of his March 11, 2003, federal pro se petition sparked an unusual procedural journey. After filing an amended habeas petition, the State

4

responded that the district court should dismiss the petition because Lawrence was time-barred from obtaining federal habeas relief on either the original petition or the amended petition. The State also argued that equitable tolling should not apply in Lawrence's case. Lawrence opposed the dismissal on the basis that there was a disagreement among the courts of appeal on the question whether a petition for certiorari to the U.S. Supreme Court following the denial of state post-conviction relief tolls the limitation period. Lawrence sought to invoke the doctrine of equitable tolling on the grounds that it was appropriate because (1) counsel who advised him of the timing of his petition was selected by and pre-qualified by the State of Florida under its registry statute; (2) his mental abilities prevented him from meaningfully participating in a relationship with his counsel; and (3) he had a facially strong constitutional claim.

On April 12, 2004, the district court entered an order staying the proceedings. The court determined that whether Lawrence's petition was time-barred "depends upon whether the one-year limitations period was tolled during the pendency of Petitioner's petition for writ of certiorari in the United States Supreme Court challenging the state court's denial of his motion for state collateral review." [Dist. Ct. Order 28 at 1-2]. The court noted that there was a circuit split on the issue, although Eleventh Circuit precedent clearly stated that

5

the limitations period was not tolled during the pendency of a petition for certiorari challenging the state court's denial of post-conviction relief. *See Coates v. Byrd*, 211 F.3d 1225, 1227 (11th Cir. 2000). On the question of equitable tolling, the district court found that Lawrence had not met the prerequisites to equitable tolling. However, in light of the pending certiorari petition in *Abela v. Martin*, 348 F.3d 164 (6th Cir. 2003), *cert. denied sub nom. Caruso v. Abela*, 541 U.S. 1070, 124 S. Ct. 2388 (2004), which held contrary to this circuit's decision in *Coates*, 211 F.3d at 1227, the district court entered an order staying the proceedings. The district court noted that if the Supreme Court denied review in *Abela*, then it would dismiss Lawrence's petition based on *Coates*. [Dist. Ct. Order 28 at 1-2].

Subsequently, on May 27, 2004, after the Supreme Court denied review in *Caruso v. Abela*, the district court noted in an order that Lawrence's petition was time-barred based on *Coates*. [Dist. Ct. Order 34 at 2]. However, the court did not enter an order dismissing the petition because the State had lodged an appeal from the district court's stay order. After this court dismissed the State's appeal from the stay order for lack of jurisdiction, the district court entered the order dismissing the petition. Lawrence filed a motion for a COA, which the district court granted. The district court set forth the issue in the COA as "whether the

one-year limitations period applicable to a petition for writ of habeas corpus under 28 U.S.C. § 2254 barred this petition, and on the legal issue whether the statute of limitations is tolled during the pendency of a petition for writ of certiorari in the United States Supreme Court challenging the state court's denial of petitioner's earlier motion for state collateral review." [Dist. Ct. Order 45, at 4].

## DISCUSSION

The only issue presented in the COA is whether the one-year limitations period under AEDPA bars Lawrence's habeas petition. After needless delay, the district court determined that Lawrence's petition was untimely.[1] "The district court's interpretation and application of a statute of limitations is a question of law that is subject to de novo review." *Hepburn v. Moore*, 215 F.3d 1208, 1209 (11th Cir. 2000). We also review de novo the district court's legal decision on equitable tolling. *Drew v. Dep't of Corr.*, 297 F.3d 1278, 1283 (11th Cir. 2002); *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000). However, we will reverse the district court's factual determinations only if they are clearly erroneous. *Drew*, 297 F.3d at 1283. The district court's finding whether a party was diligent in ascertaining

---

[1] We say needless delay because we conclude that the district court abused its discretion in entering a stay order pending a certiorari ruling by the United States Supreme Court in *Caruso v. Abela*, 541 U.S. 1070, 124 S. Ct. 2388 (2004). The stay injured the State because the State has a substantial interest in the finality of state criminal proceedings. *See McCleskey v. Zant*, 499 U.S. 467, 493, 111 S. Ct. 1454, 1470 (1991). "Each delay, for its span, is a commutation of a death sentence to one of imprisonment." *Thompson v. Wainwright*, 714 F.2d 1495, 1506 (11th Cir. 1983).

the federal habeas filing deadline is a finding of fact. *See id.* at 1287, 1287 n.2

(stating that "[t]reating a finding regarding diligence as a finding of fact is

consistent with the approach taken by the majority of the circuits in both habeas

corpus proceedings and other contexts").

We begin our discussion by setting forth the limited circumstance under

which a court may issue a COA. The right to appeal is governed by the COA

requirements set forth in 28 U.S.C. § 2253(c):

> **(c)(1)** Unless a circuit justice or judge issues a certificate of
> appealability, an appeal may not be taken to the court of appeals from
> –
>
>> **(A)** the final order in a habeas corpus proceeding in
>> which the detention complained of arises out of process
>> issued by a State court; or
>> **(B)** the final order in a proceeding under section 2255.
>
> **(2)** A certificate of appealability may issue under paragraph (1) only
> if the applicant has made a substantial showing of the denial of a
> constitutional right.
>
> **(3)** The certificate of appealability under paragraph (1) shall indicate
> which specific issue or issues satisfy the showing required by
> paragraph (2).

28 U.S.C. § 2253(c).

Under this limited provision, if a district court denies a habeas petition on

procedural grounds without reaching the petitioner's underlying constitutional

claims, a COA should issue only if the petitioner shows "that jurists of reason

8

would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 478, 120 S. Ct. 1595, 1601 (2000). "[B]oth showings [must] be made before the court of appeals may entertain the appeal." *Id.* at 485, 120 S. Ct. at 1604. If the procedural bar is obvious and the district court correctly invoked it to dispose of the case, "a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.* at 484, 120 S. Ct. at 1604. The court may first resolve the issue whose answer is more apparent from the record and the arguments. *Id.* at 485, 120 S. Ct. at 1604. "The recognition that the court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of, allows and encourages the court to first resolve procedural issues." *Id.* (quotations and citation omitted).

Because of the statutory constraint in issuing a COA, we are puzzled by the district court's issuance of a COA in this case. The district court should not have issued a COA on the statute of limitations issue because binding circuit precedent clearly disposed of the issue. "[T]he time during which a petition for writ of certiorari is pending, or could have been filed, following the denial of collateral

9

relief in the state courts, is not to be subtracted from the running of time for 28 U.S.C. § 2244(d)(1) statute of limitations purposes." *Coates*, 211 F.3d at 1227. On that basis, jurists of reason would not find the timeliness issue debatable in this circuit. Thus, a COA should not have issued.

However, the district court did issue a COA on the statute of limitations issue. Although the COA does not specifically state that the exceptions to the statute of limitations – State impediment and equitable tolling – are included within the COA, Lawrence contends that these exceptions are subsumed within the COA and properly before this court for consideration. We agree. To decide whether the statute of limitations bars Lawrence's federal habeas petition, we must consider whether a State impediment or equitable tolling excepts the one-year filing deadline. If Lawrence can demonstrate that a State impediment prevented him from timely filing or that equitable tolling applies to his case, then his petition is timely.

Lawrence contends that 28 U.S.C. § 2244(d)(1)(B)[2] applies to his case because the State caused an impediment to his timely filing by providing him with

---

[2] This provision states that the one-year limitation period shall begin to run on "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." 28 U.S.C. § 2244(d)(1)(B).

an incompetent attorney through the Florida counsel registry system. It is not clear, however, that Lawrence asserted a § 2244(d)(1)(B) impediment to the district court. We generally do not consider an issue that was not raised in the district court. *Calzadilla v. Banco Latino Int'l.*, 413 F.3d 1285, 1287 (11th Cir. 2005); *Rhine v. Boone*, 182 F.3d 1153, 1154 (10th Cir. 1999) (refusing to consider § 2244(d)(1)(B) argument because petitioner did not argue in district court that State had created an impediment to his filing in violation of the Constitution). Assuming Lawrence presented this issue to the district court, we conclude that Lawrence's assertion that the State impeded him from timely filing by providing an incompetent attorney to assist him after setting up a State registry system to monitor attorney performance, is meritless. This is not the type of State impediment envisioned in § 2244(d)(1)(B).

Additionally, Lawrence cannot show that there are extraordinary circumstances present in his case to warrant the application of equitable tolling. "Equitable tolling is an extraordinary remedy which is typically applied sparingly." *Steed*, 219 F.3d at 1300. It is available "when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999). Equitable tolling is limited to rare and exceptional

circumstances, such as when the State's conduct prevents the petitioner from timely filing. *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000); *see also Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S. Ct. 453, 458 (1990) (stating that the Court has allowed equitable tolling in situations where complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass); *Arce v. Garcia*, 400 F.3d 1340, 1349 (11th Cir. 2005) (noting that in order to invoke equitable tolling, courts usually require some affirmative misconduct, such as deliberate concealment).

Making the most of a novel argument, Lawrence posits that the State's provision to him of an incompetent attorney justifies the imposition of equitable tolling. This is not an extraordinary circumstance that warrants the application of equitable tolling. Moreover, we have stated on numerous occasions that "attorney negligence is not a basis for equitable tolling, especially when the petitioner cannot establish his own diligence in ascertaining the federal habeas filing deadline." *Howell v. Crosby*, 415 F.3d 1250, 1250 (11th Cir. 2005); *accord Helton v. Secretary for the Dep't of Corr.*, 259 F.3d 1310, 1313 (11th Cir. 2001); *Steed*, 219 F.3d at 1300; *Sandvik*, 177 F.3d at 1270.

Lawrence also contends that his mental incapacity prevented him from timely filing and justifies the invocation of equitable tolling. However, Lawrence

12

cannot establish a causal connection between his alleged mental incapacity and his ability to file a timely petition. Lawrence admits in his appellate brief that medical reports state that his full scale IQ is 81, and he admits that he did not make the assertion that he was mentally incompetent per se. Instead, Lawrence claims that his initial pleading made it clear that he has suffered from mental impairments his entire life. However, this contention, without more, is insufficient to justify equitable tolling. *See Bilbrey v. Douglas*, 124 Fed. Appx. 971, 973 (6th Cir. 2005) (finding that equitable tolling did not apply because petitioner "failed to establish a causal connection between her mental condition and her ability to file a timely petition"); *Green v. Hinsley*, 116 Fed. Appx. 749, 751 (7th Cir. 2004) (finding that equitable tolling did not apply because petitioner failed to submit evidence of how his low IQ would render him incompetent or prevent him from timely filing his petition); *Fisher v. Gibson*, 262 F.3d 1135, 1145 (10th Cir. 2001) (finding that petitioner's mere allegations of incompetency at the time of his guilty pleas did not suffice to warrant equitable tolling of the limitations period); *Collins v. Scurr*, 230 F.3d 1362 (8th Cir. 2000) (Table) (finding that bald and unsupported assertions that relate to an instance of alleged mental incompetency that occurred at a time remote to petitioner's habeas petition filing deadline did not equitably toll the statute of limitations); *Fisher v. Johnson*, 174 F.3d 710, 716 (5th Cir. 1999)

13

(finding that equitable tolling did not apply when petitioner's brief period of incapacity "occurred at a time so remote to his deadline" and petitioner could not show that he diligently pursued his application the remainder of the one-year filing deadline); *cf. Laws v. Lamarque*, 351 F.3d 919, 923 (9th Cir. 2003) (remanding case for further factual development on issue of whether petitioner's mental illness prevented him from timely filing his federal habeas petition as to warrant the application of equitable tolling); *Nara v. Frank*, 264 F.3d 310, 320 (3d Cir. 2001) (remanding case for further factual development where petitioner "presented evidence of ongoing, if not consecutive, periods of mental incompetency" because mental incompetence may constitute an extraordinary circumstance for purposes of tolling the statue of limitations when a person's mental deficiency affects his ability to file a timely habeas petition).

## CONCLUSION

For the above stated reasons, we affirm the district court's order dismissing Lawrence's habeas petition as untimely.

AFFIRMED.