[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 05-15250
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 11, 2007
THOMAS K. KAHN
CLERK

D. C. Docket Nos. 04-00067-CV-1-DHB & 92-00108 CR-1-D

RAYMOND OUTLER,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(May 11, 2007)**

Before ANDERSON and BARKETT, Circuit Judges, and STROM,* District
Judge.

PER CURIAM:

_____
*  Honorable Lyle E. Strom, United States District Judge for the District of Nebraska, sitting by
designation.

Raymond Outler appeals the district court's order denying as untimely his motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. On appeal, Outler argues that the Supreme Court's decision in Castro v. United States, 540 U.S. 375, 124 S. Ct. 786 (2003), provides the primary basis for his several arguments attempting to bypass the one-year limitations period of § 2255.

## I. FACTS

On April 13, 1993, a jury convicted Outler of armed bank robbery and possession of a firearm by a convicted felon. The district court sentenced him to 240 months' imprisonment. Outler appealed his conviction to this Court, which affirmed his sentence and conviction in United States v. Outler, 37 F.3d 637 (11th Cir. 1994) (Table), and the Supreme Court denied Outler's petition for a writ of certiorari in January 1995.

In July 1995, Outler filed a motion for a new trial pursuant to Fed.R.Crim.P. 33. In this motion, Outler argued that he found new evidence, that his attorney gave ineffective assistance of counsel, that there was prosecutorial misconduct, that there were Rule 43 and Confrontation Clause violations, that the district court committed error during the jury instructions, and that it was a sham prosecution. In December 1995, the district court treated the Rule 33 motion in part as a motion for

2

new trial, and the remainder of the claims as a § 2255 motion, and denied all of the claims on the merits. Outler unsuccessfully appealed to this Court, Outler v. United States, No. 96-8276 (11th Cir. June 24, 1998) (unpublished), challenging only one of the district court's substantive dispositions; he also challenged the district court's recharacterization as incorrect on procedural grounds. While the appeal was pending, in August 1997, Outler filed a Rule 60(b) motion, seeking independent action for fraud on the court and raising substantive arguments. The district court denied that motion in February 1998 and this Court affirmed in June.

Then, on March 16, 1999, Outler turned his attention to the Fourth Circuit and filed a § 2241 petition with the Southern District of West Virginia. While it was pending, Outler filed a motion for mandamus. When both were denied, Outler appealed to the Fourth Circuit, which affirmed on June 13, 2002. Outler moved for reconsideration, which was denied, and the mandate issued on August 5, 2002. Six weeks later, Outler filed a Rule 60(b) motion in the Southern District of West Virginia, which the court denied on September 22, 2003. Again he appealed to the Fourth Circuit, but it denied his appeal on November 4, 2004; the mandate issued on February 7, 2005. He then petitioned the Supreme Court but both his petition for certiorari and for rehearing were denied, the latter on June 6, 2005.

Back in this Circuit, in July 2003, he filed a motion to modify his term of

imprisonment pursuant to 18 U.S.C. § 3582. The district court denied this motion. He also sought permission from this Court to file a successive § 2255 motion, which was denied on July 8, 2003. In re Outler, No. 03-13265 (11th Cir. July 8, 2003) (unpublished).

In April 2004, Outler filed the instant § 2255 motion, and the district court dismissed it as successive. In this motion, Outler raised largely the same arguments he had raised in his recharacterized Rule 33 motion; the only argument he added was a competency to stand trial challenge. Outler appealed the district court's dismissal of the instant § 2255 motion. This Court granted a COA on the issue of whether the district court violated Castro v. United States, 540 U.S. 375, 124 S. Ct. 786 (2003), by treating the instant motion as successive when it recharacterized his prior Rule 33 motion as a § 2255 motion without informing him of the consequences of the recharacterization or giving him the opportunity to withdraw or amend it. This Court then applied Castro, and vacated and remanded the district court's order dismissing Outler's § 2255 motion as successive because the district court did not apprise Outler of its intent to recharacterize his Rule 33 motion, and he was never warned that his 1995 motion would render subsequent § 2255

4

motions successive.[1]  Outler v. United States, 129 Fed.Appx. 553 (11th Cir. 2005) (unpublished).  This Court declined to express an opinion as to whether the § 2255 motion was time-barred.

On remand, the magistrate judge found that the instant § 2255 motion was time-barred.  The magistrate judge found that Outler had one year from the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA") to file his § 2255 motion, i.e., April 23, 1997.   The magistrate judge further noted that Outler outlined no basis for equitable tolling.

Outler filed a written objection to the magistrate judge's report, asserting that the statute of limitations should run from the date on which Castro was decided, rather than from the effective date of AEDPA, for three reasons.  First, he asserted that until Castro was decided, he was prevented from filing his § 2255 motion because of a government-imposed impediment to filing under 28 U.S.C. § 2255 ¶ 6(2). Second, he argued that his § 2255 motion raised a right newly recognized by the Supreme Court in Castro and made retroactively applicable to cases on collateral review under 28 U.S.C. § 2255 ¶ 6(3).   Finally, he asserted the magistrate judge erred by not finding that the statute of limitations period should be

---

[1]  Thus, the retroactive application of Castro to the instant § 2255 motion is law of the case, is not challenged by the government in this appeal, and therefore is an issue that is not before us.

equitably tolled.

The district court again dismissed Outler's instant § 2255 motion, adopting the recommendation of the magistrate judge over Outler's objections. The district court noted that this Court has rejected the argument that a federal prisoner's filing of a post-conviction motion allows for delaying the start of the AEDPA clock. The district court found that the post-conviction actions initiated by Outler did not constitute government action that prevented him from filing a § 2255 motion. The court also observed that Castro has nothing to do with whether his present § 2255 motion is timely. Finally, the court found that Outler lacked due diligence in filing the instant § 2255 motion.

Outler subsequently filed a timely notice of appeal. He moved for a COA with the district court, and the district court granted a COA on the issue of whether the instant § 2255 motion is time-barred.

## II. DISCUSSION

On appeal, Outler argues that the statute of limitations should begin to run from the date Castro was decided for three reasons. First, he argues that when the government suggested that his Rule 33 motion be construed as a § 2255 motion, and the district court agreed, it impeded his ability to file a first § 2255 motion. He

claims that this impediment was not removed until Castro was decided.  Second, he asserts that Castro announced a new right concerning AEDPA that was made retroactively applicable to cases on collateral review.  Third, he asserts that equitable tolling should apply because the district court incorrectly found that he did not act with due diligence.

This Court reviews de novo a district court's dismissal of a § 2255 motion as time-barred, as well as a district court's finding that equitable tolling does not apply.  Jones v. United States, 304 F.3d 1035, 1037 (11th Cir. 2002).

The AEDPA imposes a one-year statute of limitations for filing a §2255 motion. See 28 U.S.C. § 2255; Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999) (holding that the limitations provision in § 2255 ¶ 6 is a statute of limitations and not a jurisdictional requirement). Federal prisoners whose convictions became final before the effective date of the AEDPA had until April 23, 1997, to file a § 2255 motion, unless one of the triggering dates in 28 U.S.C. § 2255 ¶¶ 6(2)-(4) applies.  Goodman v. United States, 151 F.3d 1335, 1337-38 (11th Cir. 1998).   For federal prisoners filing § 2255 motions, the statute of limitations runs from the latest of the following trigger dates:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by

governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

It is undisputed that the present § 2255 motion is time-barred if the trigger for the statute of limitations is when Outler's conviction became final under § 2255 ¶ 6(1) and equitable tolling does not apply. Outler's conviction was final before the enactment of the AEDPA. Thus, Outler had until April 23, 1997, to file his § 2255 motion. Outler's filing of a Rule 33 motion would not have tolled the one-year limitations period. United States v. Barnes, 437 F.3d 1074, 1079 (11th Cir. 2006) (holding that a Rule 33 motion does not toll the one-year limitations period). Thus, while his initial appeal was pending before this Court, he should have filed his § 2255 motion. Therefore, the question of whether the instant motion is time-barred involves three inquiries: (1) does the triggering date under § 2255 ¶ 6(2) apply; (2) does the triggering date under 28 U.S.C. § 2255 ¶ 6(3) apply; and

8

(3) is Outler entitled to equitable tolling. In order to understand these issues, it is necessary to review the Supreme Court's decision in Castro because Outler argues that Castro is determinative of all these issues.

In Castro, the Supreme Court held that when a district court recharacterizes a pro se pleading as an initial § 2255 motion, the district court must do the following:

> (1) notify the pro se litigant that it intends to recharacterize the pleading, (2) warn the litigant that this recharacterization means that any subsequent § 2255 motion will be subject to the restrictions on "second or successive" motions, and (3) provide the litigant an opportunity to withdraw the motion or to amend it so that it contains all the § 2255 claims he believes he has.

540 U.S. at 383, 124 S. Ct. at 792. The consequence of a district court's failure to fulfill these three requirements is that "the [original] motion cannot be considered to have become a § 2255 motion for purposes of applying to later motions the law's 'second or successive' restrictions." Id.

A.  Governmental Impediment to Filing: 28 U.S.C. § 2255 ¶ 6(2)

Under 28 U.S.C. § 2255 ¶ 6(2), the statute of limitations runs from "the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action."  We conclude that the district court's recharacterization of Outler's Rule 33 motion is not the type

9

of impediment contemplated by § 2255 ¶ 6(2).  In the first place, the recharacterization cannot properly be called a violation of the Constitution or laws of the United States.  We do not read <u>Castro</u> as holding that a recharacterization is unlawful.  In <u>Castro</u>, the Supreme Court addressed the "longstanding practice," 540 U.S. at 377, 124 S. Ct. at 789, of ignoring the label attached to a pleading by a <u>pro se</u> litigant and recharacterizing it as a request for habeas relief under 28 U.S.C. § 2255.  Because of the potential adverse consequences of such a recharacterization – the statutory restrictions on successive § 2255 petitions – the Court exercised its supervisory powers and instructed district courts to notify such <u>pro se</u> litigants of an intent to recharacterize, warn about the successive restrictions, and provide an opportunity to withdraw the motion or amend it to include other available § 2255 claims.  <u>Id.</u> at 383, 124 S. Ct. at 792.  The Court held that a recharacterization in the absence of such notification would not be deemed a § 2255 motion for purposes of applying restrictions on successive § 2255 petitions; in other words, the Court eliminated the potential adverse consequences associated with a recharacterization.

Nothing in <u>Castro</u> indicates that a recharacterization is unlawful.  To the contrary, the Court expressly held that

> They [courts] may do so [recharacterize] to avoid an unnecessary dismissal . . . to avoid inappropriately stringent application of formal labeling requirements, . . . or to create a better correspondence

10

between the substance of a <u>pro se</u> motion's claim and its underlying legal basis.

<u>Id.</u> at 381-82, 124 S. Ct. at 791-92.

Although the recharacterization in this case was not unlawful, it is true that the recharacterization occurred before the case law required the district court give notice. And it is true that the recharacterization here was not accompanied by the notice later provided for by the Supreme Court's supervisory authority in <u>Castro</u>. However, because the prior panel applied the <u>Castro</u> holding retroactively, the adverse consequences of the recharacterization contemplated by <u>Castro</u> have been eliminated. Accordingly, we hold that nothing in <u>Castro</u> indicates that the recharacterization in this case is the type of impediment contemplated by § 2255 ¶ 6(2).

Our decision in this regard finds support in <u>Lawrence v. Florida</u>, 421 F.3d 1221, 1226 (11th Cir. 2005), <u>aff'd on other grounds</u>, __ U.S. __, 127 S.Ct. 1079 (2007). That case involved 28 U.S.C. § 2244(d)(1)(B), the tolling provision applicable to § 2254 petitions whose purpose and language is virtually identical to that of § 2255 ¶ 6(2). In <u>Lawrence</u>, this court rejected a habeas petitioner's argument that the State's appointment of an incompetent attorney to represent him caused his untimely filing and was a State-imposed impediment within the meaning

of § 2244(d)(1)(B).  We held that the State's appointment of such an attorney was not the type of impediment contemplated by the tolling provision.  Like the appointment of the attorney in <u>Lawrence</u>, the district court's recharacterization in this case, at the suggestion of the government, was, at worst, a misguided attempt to assist an unschooled <u>pro se</u> litigant.  As in <u>Lawrence</u>, we hold that the recharacterization here is not the type of impediment contemplated in § 2255 ¶ 6(2).

> B.  <u>Newly Recognized Right Made Retroactively Applicable, 28 U.S.C. § 2255  ¶ 6(3)</u>

Under 28 U.S.C. § 2255 ¶ 6(3), the statute of limitations runs from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  The meaning of "right asserted" in 28 U.S.C. § 2255 ¶ 6(3) is the substantive right that forms the basis for the § 2255 motion, rather than a procedural right related to the timing or manner in which the § 2255 motion is filed.  Logic and the plain language of the statute support this interpretation: the statute states that the one-year limitations period begins to run from "the date on which the right asserted was initially recognized . . . ." § 2255 ¶ 6(3).  Additionally, the Court in <u>Castro</u> created a procedural rule.  The Court spoke

12

of regulating lower courts' practices and its "'supervisory powers' over the Federal Judiciary." 540 U.S. at 382, 124 S. Ct. at 792. It talked of the warning as "help" for the pro se litigant and stated that the "'lack of warning' prevents his making an informed judgment" of whether he should contest the recharacterization. Id. at 384, 124 S. Ct. at 793. Outler is attempting to use Castro not as a right upon which his motion for relief rests, but as a portal through which to avoid the statute of limitations barrier. We hold that there is simply no new right created by the Court in Castro as that term is contemplated in § 2255 ¶ 6(3).

    C.    <u>Equitable Tolling</u>

The statute of limitations can be equitably tolled where a petitioner "untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." <u>Steed v. Head</u>, 219 F.3d 1298, 1300 (11th Cir. 2000) (quotation omitted). Equitable tolling is only available if the petitioner establishes (1) extraordinary circumstances and (2) due diligence. <u>Diaz v. Sec'y for Dep't of Corr.</u>, 362 F.3d 698, 702 (11th Cir. 2004). Courts need not consider whether extraordinary circumstances exist if a prisoner's delay in filing the motion or petition exhibits a lack of due diligence. Id. at 702 n.7. Equitable tolling is an extraordinary remedy and is applied sparingly. <u>Drew v. Dep't of Corr.</u>, 297 F.3d 1278, 1286 (11th Cir. 2003). "The burden of establishing entitlement to this

13

extraordinary remedy plainly rests with the petitioners." Id.

Outler's argument in favor of equitable tolling relies upon his numerous filings seeking to challenge the district court's recharacterization of his 1995 Rule 33 motion for a new trial and asserting his various claims, all of which he argues constitute due diligence. To satisfy the extraordinary circumstances requirement, Outler relies primarily upon the change of law effected by Castro. We focus primarily upon the extraordinary circumstances requirement.

After careful consideration of all the circumstances, we cannot conclude that Outler has established an entitlement to equitable tolling. As discussed below, we do not believe that the mere change of law worked by Castro is sufficient. Also for the reasons discussed below, we do not think that Outler has demonstrated that the recharacterization in this case deterred him from filing additional claims for relief before the one-year statute of limitations period expired. Significantly, at no time prior to the expiration of the statute of limitations did Outler alert the district court or this Court that he had other claims that he intended to raise in a § 2255 petition, and he did not identify any such additional claims. Finally, even in the instant § 2255 motion, filed in April 2004, approximately seven years after the expiration of the statute of limitations on April 23, 1997, Outler has raised only one issue that had not already been raised, and decided against him on the merits, in his original

14

Rule 33 motion.

We turn first to Outler's argument that he has satisfied the extraordinary circumstances requirement because of the change of law effected by Castro. In Gonzalez v. Crosby, 545 U.S. 524, 125 S. Ct. 2641 (2005), the Supreme Court, in a different but analogous context, addressed the change of law governing application of this same one-year statute of limitations, and held that the change of law did not constitute extraordinary circumstances for purposes of Rule 60(b). The district court in Gonzalez had dismissed Gonzalez's habeas petition as time-barred, holding that a certain state collateral proceeding had not been "properly filed" and therefore did not toll the running of the statute of limitations. A judge of the Eleventh Circuit denied a certificate of appealability, and Gonzalez sought no further review at that time. Some seven months later, the Supreme Court issued its opinion in Artuz v. Bennett, 531 U.S. 4, 121 S. Ct. 361 (2000). Gonzalez then filed the Rule 60(b) motion at issue in the case. The Supreme Court assumed that the district court's statute of limitations ruling and dismissal of Gonzalez's habeas petition was erroneous under the interpretation of the law as set out in Artuz. Gonzalez argued that the change of law constituted extraordinary circumstances. The Supreme Court disagreed, holding that "it is hardly extraordinary that subsequently, after petitioner's case was no longer pending, this Court arrived at a

15

different interpretation." 545 U.S. at 536, 125 S.Ct. at 2650. The Court noted that the change of law in Artuz was "all the less extraordinary in petitioner's case," because he had failed to challenge the district court's statute of limitations ruling in his application for a certificate of appealability to the Eleventh Circuit, and had failed to seek certiorari review of that denial. Id. at 537, 125 S.Ct. at 2651.

We believe that Gonzalez provides substantial support for our decision in this case that the change of law worked by Castro does not constitute extraordinary circumstances. Although Gonzalez was asserting a change of law as an extraordinary circumstance warranting the reopening of a closed case, while Outler is asserting a change of law as warranting equitable tolling, Outler, like Gonzalez, is arguing that the change of law demonstrates that long-closed previous litigation was decided against him incorrectly – i.e., the district court's decision in December 1995, recharacterizing his Rule 33 motion was erroneous and harmful, and that the same change of law demonstrates that this Court's June 24, 1998, affirmance of that decision was erroneous and harmful. We see no reason why the change of law should be any more extraordinary in the instant equitable tolling context than was the change of law in Gonzalez.

Moreover, in the instant case, as in Gonzalez, Outler failed to challenge the recharacterization of his pleading to the fullest extent. Indeed, in the district court,

16

after the government suggested the recharacterization, Outler's responsive brief

noted the government's suggestion, but made no argument at all in opposition to it.

After the district court's ruling recharacterizing his claims, Outler filed a motion to

alter or amend, but did not challenge the recharacterization. It is true that Outler

did challenge the recharacterization for the first time in his September 1996 brief to

this Court. However, the challenge was based not upon the fact that the

recharacterization deprived him of the opportunity to file a § 2255 motion or raise

additional claims; rather, Outler's vague argument apparently reflected a belief that

the recharacterization somehow led the district court to reject his new trial claim

based on newly discovered evidence. At best, we deem this a conclusory challenge

to the recharacterization.[2] Moreover, after this Court affirmed the

recharacterization, Outler failed to seek certiorari review, as Gonzales had not

either.

Second, we are not persuaded that Outler has demonstrated in this case that

he was deterred by the recharacterization from asserting additional claims before

---

[2]  This new evidence claim was the only substantive claim Outler pursued on appeal. Thus, he abandoned the other claims that were the subject of the district court's recharacterization. The new evidence claim was not affected by the district court's recharacterization, contrary to Outler's vague suggestion in the September 1996 brief. Rather, the district court addressed the new evidence claim as a Rule 33 new trial claim, and denied it on the merits.

the expiration of his statute of limitations.[3] To the extent that he was unaware that the recharacterization would impose restrictions on or impediments to his filing of additional claims, he of course would have experienced no deterrence. On the other hand, to the extent that he might have been aware that a recharacterization would impose additional restrictions on or impediments to his filing of additional claims within the statute of limitations, common sense indicates that he would have promptly contested such recharacterization, and promptly expressed an intention to assert any such additional claims that he had.[4] In this regard, we focus upon Outler's actions before the expiration of his limitations period. In this case, as we noted above, Outler acknowledged in his responsive brief in the district court that the government had recommended recharacterization, but he expressed no

---

[3] The importance of what Outler did during the limitations period stems from our concern that he not be placed in a better position than other habeas petitioners. If he is allowed to raise claims that only occurred to him after the limitations period it would not be equitable to other petitioners who also thought of claims after the period expired. Thus we require a showing that Outler would have brought these claims during the limitations period.

[4] Although Castro held that a pro se litigant should be given actual notice of the restrictions on successive § 2255 motions, no case has ever held that a pro se litigant should be given actual notice of a statute of limitations. Cf. Pliler v. Ford, 542 U.S. 225, 231-32, 124 S.Ct. 2441 (2004) (holding that district courts are not required to warn pro se habeas petitioners that their federal claims could be time-barred absent equitable tolling if a petitioner opts to dismiss a mixed petition without prejudice and to return to state court to exhaust all claims). Rather, pro se litigants, like all others, are deemed to know of the one-year statute of limitations. Indeed, any such requirement of actual notice would virtually eviscerate the statute of limitations. Thus, the law does not require a court, sua sponte, to remind a pro se litigant that he has only one year to file his claim.

opposition to that recommendation. Moreover, after the district court's

recharacterization, he filed a motion to alter or amend, but did not challenge the

recharacterization. These actions evidence either an unawareness of adverse

consequences, or the absence of any additional claims to be asserted. It is true that

Outler, in his initial brief on appeal, did make a conclusory challenge to the

recharacterization, but he failed to identify any additional claims that he wanted to

assert, or even express a desire to assert additional claims.[5] Moreover, when the

---

[5] It is true that a challenge to a recharacterization could be deemed an implicit expression of a desire to assert additional claims. However, a mere expression of a desire to assert unidentified claims, even if expressed prior to the expiration of the statute of limitations, may not warrant tolling the time bar. For example, if a pro se litigant filed a petition on the day before the limitations period expired merely expressing a desire to assert unidentified claims later, we doubt that such a petition would toll the statute of limitations for later identified claims. Cf. Davenport v. United States, 217 F.3d 1314 (11th Cir. 2000) (rejecting petitioner's effort to amend his § 2255 motion after the statute of limitations period had passed because the new claims did not relate back to the originally stated ones). We need not so decide in this case, however, because, in any event, Outler never even hinted at such a desire in the district court. Outler first challenged the recharacterization in his brief on appeal from the district court's denial of his Rule 33 motion, and even that challenge was in conclusory manner as noted in the text above. As noted in the text, infra, Outler failed to assert any prejudice from the recharacterization, notwithstanding the government's argument that there was no prejudice. Thus, Outler identified no such prejudice; in other words, he identified no desire to assert additional claims and identified no such additional claims. Moreover, even if Outler's conclusory challenge to the recharacterization in his brief on appeal is accorded some significance, his challenge would have been subject only to plain error review. United States v. Kennard, 472 F.3d 851, 858 (11th Cir. 2006) ("We will not correct an error the defendant failed to raise in the district court unless (1) the district court did, in fact, err, (2) the error was plain, (3) the error affects the defendant's substantial rights, and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."). Outler would not have been able to demonstrate plain error. The recharacterization was clearly not obvious error at the time. More significant, the government argued the absence of prejudice, and Outler demonstrated none. Thus, Outler would not have surmounted the third prong of the plain error analysis – the requirement of showing an adverse effect on his substantive rights. Such a situation, which would not have constituted plain error, does not add much force to Outler's effort to establish equitable tolling.

government's responsive brief noted that Outler had failed to identify any prejudice arising from the recharacterization, Outler filed a reply brief, but failed to identify any prejudice that he had suffered from the recharacterization. For example, he did not note that additional claims would be subject to successive restrictions, and did not assert that he had additional claims or identify them. On the basis of these actions – the only actions by Outler before the expiration of his limitations period – we cannot conclude that Outler has demonstrated that he did in fact have additional claims that he wished to assert within the statute of limitations. We cannot conclude that he has demonstrated that he was deterred from filing additional claims by the recharacterization. We decline to presume from the mere fact of the recharacterization that he was deterred, in the absence of any evidence demonstrating actual deterrence.

It is significant in our thinking that, as noted above, before the expiration of the one-year statute of limitations, Outler never alerted the district court or this court that he had additional claims that he wished to raise in a § 2255 motion, or identified such additional claims. By the time that he gave any indication that he had other issues, in August 1997,[6] when he filed his Rule 60(b) motion, his statute

_____

[6] Even in this August 1997 motion, Outler merely identified another claim; he did not challenge the recharacterization or indicate any deterrent effect it had.

20

of limitations had already expired several months before.[7]  Finally, even as late as

April 2004, when Outler filed the instant § 2255 motion, he has raised only one

issue that had not been raised, and decided against him on the merits, in his original

Rule 33 motion.

The three cases upon which Outler relies are each distinguishable.  For

example, in United States v. Kelly, 235 F.3d 1238 (10th Cir. 2000), the district

court had recharacterized (as a § 2255 motion) a motion seeking relief under

Fed.R.Crim.P. 32 and 35.  On direct appeal therefrom, the Tenth Circuit vacated

and remanded to the district court with instructions similar to the Castro

instructions.  Of particular relevance to the instant case, the Tenth Circuit noted

that at the time of the district court's ruling, Kelly had several months remaining in

which to file a timely § 2255 motion.  Accordingly, the court held that the

limitations period should be tolled, thus giving Kelly an opportunity to assert his

additional claims on remand.  We believe that Kelly is distinguishable in several

respects.  Significantly, the court noted that Kelly was planning to assert claims in

---

[7]  As summarized at the outset of this opinion, Outler filed numerous pleadings after the expiration of his limitations period, in the district court, in this court, and in the Fourth Circuit. In many of these filings, Outler challenged the recharacterization and/or attempted to assert additional claims for relief.  However, all of these belated challenges came after the expiration of his statute of limitations, and none provide convincing evidence that Outler desired to assert additional claims before his limitations period expired, had identified such claims, or was deterred from asserting them because of the recharacterization.

addition to those contained in his motion under Rules 32 and 35, id. at 1241, and indeed Kelly had already asserted two additional claims on the same day that the district court ruled, claims that the district court had never addressed. Id. at 1240. Unlike Kelly, prior to the expiration of his statute of limitations, Outler never expressed a desire to assert additional claims, and never identified any such additional claims. Kelly is also distinguishable in another respect. The stage of Outler's several proceedings that is comparable to the stage at issue in Kelly is Outler's Rule 33 motion for new trial. As noted above, Outler never objected in the district court to the recharacterization. Although Outler did make a conclusory challenge to the recharacterization in his brief on appeal, as in Gonzalez, he failed to seek certiorari review from the Eleventh Circuit decision. Unlike Kelly, who successfully challenged the recharacterization of his claims in the same proceeding in which they were recharacterized, Outler is attempting to challenge a recharacterization ruling in a 1995 district court decision, affirmed by the Eleventh Circuit in 1998 – a long-closed case. [8]

---

[8] The other two cases relied upon by Outler are distinguishable for the same reasons. See United States v. Miller, 197 F.3d 644 (3d Cir. 1999); Adams v. United States, 155 F.3d 582 (2d Cir. 1998). In both cases, the petitioner promptly challenged the recharacterization and indicated a desire to assert additional claims. Also, both cases involved the same stage of the litigation as was involved in Kelly; in other words, in neither case was the petitioner attempting to challenge a recharacterization decision in a long closed case.

22

# III. CONCLUSION

Having rejected each of Outler's arguments for tolling of the statute of limitations, we conclude that the district court's decision dismissing his petition as time-barred is due to be affirmed.[9]

---

[9] We note that the dissent focuses primarily upon Outler's rather considerable litigation, but fails to note that almost all of these efforts occurred after the statute of limitations had expired on April 23, 1997. Even the dissent notes that the first assertion of an additional claim occurred in April 2004, seven years after the statute of limitations had run. In other words, it was not until then that Outler made any suggestion that he had other claims, in addition to those he asserted, and which were decided against him on the merits, in the 1995 suit that he labeled a Rule 33 motion and that was recharacterized.

However, we respectfully submit that the focus of the dissent on the later efforts is misguided. Contrary to the suggestions of the dissent, the relevant actions of Outler are those that occurred before April 23, 1997 (or at least actions that reflected intentions or deterrence to action before that date). The dissent does note that Outler challenged the recharacterization in 1996 on appeal from the Rule 33 motion, and the dissent concludes that this "1996 appeal is further evidence that he had additional claims that he wished to assert." Dissenting opinion at 7. We respectfully disagree. The dissent overlooks the fact that his "challenge" to the recharacterization in his September 1996 brief on appeal was based not upon the fact that the recharacterization deprived him of an opportunity to file a §2255 motion or raise additional claims but rather, Outler's vague argument apparently reflected a belief that the recharacterization somehow led the district court to reject his new trial claim based on newly discovered evidence. In other words, his "challenge" on appeal was no evidence at all that he had additional claims to assert or was otherwise deterred in any way by the recharacterization. This conclusion is bolstered by the fact that Outler's responsive brief indicated no opposition at all to the government's suggestion in the district court that the Rule 33 motion be recharacterized. And after the district court's ruling, which recharacterized some of his claims, Outler filed a motion to alter or amend, but made no challenge at all to the recharacterization.

The dissent notes her disagreement with our rationale that Outler failed to show that he was deterred by the recharacterization from asserting additional claims before the expiration of the statute of limitations. Respectfully, however, we can discern no reason suggested by the dissent why this fact is not significant. We cannot understand why equity would indicate tolling when Outler has wholly failed to show that he was deterred with respect to filing any additional claims within the period of the statute of limitations. The law is clear that the burden of proof with respect to equitable tolling lies with Outler. As we noted in the text, to the extent that Outler was unaware that the recharacterization would impose restrictions to his filing of

23

**AFFIRMED.**

---

additional claims he of course would have experienced no deterrence. On the other hand, to the extent that he might have been aware that a recharacterization would impose additional restrictions on or impediments to his filing of additional claims within the statute of limitations, common sense indicates that he would have promptly contested such recharacterization and promptly expressed an intention to assert any such additional claims that he had.

In the absence of any evidence of deterrence, and in the absence of any evidence that the recharacterization played any role at all with respect to whether or not Outler filed additional claims before the statute of limitation expired, we cannot conclude that he is entitled to equitable tolling.

BARKETT, Circuit Judge, dissenting:

Respectfully, I must dissent because I believe that denying relief in this extraordinary case undermines the concept of equity that the doctrine of tolling was intended to address. Outler's petition was made untimely by an undisputed error of the court, which Outler has protested on appeal for more than a decade. The purpose of equitable tolling is to allow diligent petitioners to have their claims heard in cases where those claims were made untimely by extraordinary circumstances beyond the petitioners' control. This is one of those cases.

Petitioners whose claims would ordinarily be barred by a statute of limitations are entitled to equitable tolling when their filing was made untimely by (1) extraordinary circumstances that were (2) unavoidable even with diligence. Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000) (quotation omitted). The majority finds that Outler has failed to satisfy the first prong of this test. I believe that he has satisfied both.

## I. Extraordinary Circumstances

The extraordinary circumstance Outler points to is not, as the majority supposes, "the change of law effected by Castro," Maj. Op. at 15 (citing Castro v. United States, 540 U.S. 375 (2003)), but rather the improper, sua sponte recharacterization of his petition by the district court, which is what prevented him

25

from timely asserting all of his § 2255 claims. That improper recharacterization was an extraordinary circumstance, "beyond his control," Drew v. Dep't of Corr., 297 F.3d 1278, 1286-87 (11th Cir. 2002), which caused his filing to be untimely. See United States v. Miller, 197 F.3d 644, 653 (3d Cir. 1999) (holding that it was the "District Court's unilateral act [of recharacterization] that prevented [petitioner] from filing his intended § 2255 motion in a timely fashion."). The majority thus analyzes the wrong circumstances, and then denies equitable holding based on its misguided inquiry. See Maj. Op. at 14.

This Circuit has repeatedly recognized that improper court action, like the actions of government officials, may provide the basis for equitable tolling. Lawrence v. Florida, 421 F.3d 1221, 1226 (11th Cir. 2005), aff'd on other grounds __ U.S. __, 127 S. Ct. 1079 (2007) ("extraordinary circumstances" include "when the State's conduct prevents the petitioner from timely filing"); Knight v. Schofield, 292 F.3d 709, 712 (11th Cir. 2002) (granting equitable tolling where petitioner was misled by the clerk of court). Of course, not every state action is "extraordinary," but where the action is legally deficient—as the recharacterization here was—and directly prevents a petitioner from timely filing his claims—as the recharacterization here did—it is "extraordinary" in the sense necessary to qualify the petitioner for equitable tolling.

26

Our recent opinion in Spottsville v. Terry, 476 F.3d 1241 (11th Cir. 2007), is instructive. In Spottsville, we granted equitable tolling to a petitioner who was misled by the state habeas court into filing his notice of appeal and application for a certificate of probable cause with the wrong court. Id. at 1245. His petition was thus not timely received by the proper court. We held that:

> It is unreasonable to expect a pro se litigant to second-guess or disregard an instruction in a written order of a court. . . . Because Spottsville relied on the misleading instructions of the Superior Court of Tattnell County, equity requires that Spottsville's limitations period be tolled during the pendency of his attempting appeal of the denial of his state habeas petition. . . . .

Id. at 1246. As in Spottsville, the unilateral action of the court here undoubtedly caused the untimeliness of the filing. But the court's recharacterization of Outler's petition was more than"misleading"—it was simply wrong. Outler, acting pro se, contested that legally significant recharacterization in his initial appeal and for years thereafter, despite the fact that Eleventh Circuit law was not in his favor. The Supreme Court's 2003 decision in Castro—which the Court made retroactive and which we have already found applicable in Outler's case, Outler v. United States, 129 Fed. Appx. 553 (11th Cir. 2005)—showed that Outler was right all along about the impermissible recharacterization of his petition. Since a "misleading" court instruction that leads to an untimely filing can serve as the basis for equitable

tolling, a court error <u>barring</u> a timely filing should do as well.[10]

The majority finds that "because the prior panel applied the <u>Castro</u> holding retroactively, the adverse consequences of the recharacterization contemplated by <u>Castro</u> have been eliminated." Maj. Op. at 11. This very case belies that argument. The untimeliness of Outler's petition—like the successiveness that <u>Castro</u> specifically addressed[11]—is one of the "adverse consequences of the recharacterization." I have no problem concluding that a court's improper, <u>sua sponte</u> recharacterization of a petitioner's filing is an "extraordinary circumstance," where that recharacterization subjects the petitioner to a successiveness bar he never should have faced and thus causes his filing to be untimely.

**II. Diligence**

Moreover, on this record, there is no question that Outler was extremely

---

[10] The majority is correct that Outler "is arguing that the change of law [due to <u>Castro</u>] demonstrates that long-closed previous litigation was decided against him incorrectly." Maj. Op. at 16. But of course we have already decided—based on the Supreme Court's opinion in <u>Castro</u>—that this was the case, and that the recharacterization was improper. <u>Outler v. United States</u>, 129 Fed. Appx. 553 (11th Cir. 2005). Outler is thus undoubtedly <u>right</u> that the previous litigation regarding the propriety of the recharacterization "was decided against him incorrectly," no matter how "long-closed" that litigation is. The merits of Outler's underlying habeas claims are not before us, and I express no opinion on them here.

[11] The majority points out that "[n]othing in <u>Castro</u> indicates that a recharacterization is unlawful." Maj. Op. at 10. This is true, but irrelevant. Recharacterization without a warning of the consequences—and there was no such warning given to Outler—<u>is</u> unlawful. <u>Castro</u>, 540 U.S. at 383. Moreover, while the majority notes that "<u>pro se</u> litigants, like all others, are deemed to know of the one-year statute of limitations" on habeas petitions, Maj. Op. at 18 n.3, it fails to recognize that it was the <u>court</u>, not Outler, that invoked § 2255.

28

diligent. He has pursued near-constant litigation ever since his Rule 33 motion was improperly recharacterized as a § 2255 petition in December 1995, a recharacterization that he challenged in his initial appeal. He pursued that argument despite constant legal obstacles stemming from the recharacterization, until Castro vindicated his position. As Outler notes in his brief, he has had relevant litigation pending for all but 177 days in the past eleven and a half years. Appellant Supp. Br. at 26.

Following the recharacterization of his original Rule 33 motion as a § 2255 petition, Outler immediately appealed to this Court, arguing that the district court had improperly recharacterized his motion. When we rejected his claim based on Circuit precedent which the Supreme Court would later overturn in its retroactively applicable Castro decision, Outler twice requested permission to file a successive § 2255 motion. We denied these requests as well, at which point Outler filed a § 2241 habeas petition in the federal district court where he was incarcerated, raising substantially similar issues about the improper characterization of his first petition. He also sought certiorari from the United States Supreme Court, and filed two Rule 60(b) motions seeking relief from judgment and a motion under 18 U.S.C. § 3582(c)(2) seeking reduction of his sentence. Then, in December 2003, the Supreme Court decided Castro, holding that when a district court recharacterizes a

29

pro se litigant's motion as a § 2255, it must notify the litigant of its decision, explain "that any subsequent § 2255 motion will be subject to the restrictions on 'second or successive' motions, and provide the litigant an opportunity to withdraw the motion or to amend it so that it contains all the § 2255 claims he believes he has." 540 U.S. at 383. Because Outler was not given such a warning, he clearly fell within Castro's rule. With the successiveness obstacle to his § 2255 motion thus removed, Outler acted quickly. In April 2004, he filed the instant motion, again asserting the claims he had tried to raise in a variety of federal courts in the years since his conviction, and an additional claim that he was not competent to stand trial. The district court nevertheless twice rejected the petition, first on the grounds that it was successive—a determination which we vacated in light of Castro—and later on the grounds that it was untimely and that Outler was not entitled to equitable tolling because he had not diligently pursued his claims.

Although it never explicitly rules that Outler failed to show the diligence required for equitable tolling, the majority does say that Outler "failed to challenge the recharacterization of his pleading to the fullest extent," Maj. Op. at 16,[12] and that he has failed to demonstrate "that he was deterred by the recharacterization

---

[12] The majority does acknowledge Outler's "numerous filings seeking to challenge the district court's recharacterization of his 1995 Rule 33 motion for a new trial and asserting his various claims." Maj. Op. at 14.

30

from asserting additional claims before the expiration of his statute of limitations." Id. at 17-18. Based on the extensive litigation described above, I cannot agree with the first point, and I do not believe that the second point—even if I agreed with it—is sufficient to deny equitable tolling.

The majority repeatedly suggests that Outler was required to show "additional claims" that the recharacterization deterred him from filing. Even if this were so, Outler did, as the majority recognizes, include in his first habeas petition a previously unasserted argument regarding his capacity to stand trial. This was an "additional claim" that was not part of the original, recharacterized motion. Outler raised this new claim in the first self-identified § 2255 petition he was allowed to file. Additionally, the fact that Outler immediately challenged the recharacterization in his 1996 appeal is further evidence that he had additional claims he wished to assert.

Furthermore, I do not believe it was ever Outler's burden, in the absence of the required Castro warnings, to show that he had "additional claims" he wished to assert. The Supreme Court in Castro held that recharacterizations are improper "unless the court first warns the pro se litigant about the consequences of the recharacterization, thereby giving the litigant an opportunity to contest the recharacterization, or to withdraw or amend the motion." Castro, 540 U.S. at 382.

31

The Court recognized that part of the purpose of the required warning was to "provide the litigant an opportunity to withdraw the motion or to amend it so that it contains all the § 2255 claims he believes he has." Id. at 383. Outler was never given the chance to amend his complaint to show that he had any additional claims, because he was never given the required warning. "[T]he very point of the warning is to help the pro se litigant understand not only (1) whether he should withdraw or amend his motion, but also (2) whether he should contest the recharacterization, say, on appeal." Id. See also Nolan v. United States, 358 F.3d 480, 485 (7th Cir. 2004) (explaining rule that when a prisoner files a Rule 33 motion in the year after her conviction became final, "we instructed the district courts first to ask the petitioner if she planned to raise any other issues in a § 2255 motion, and then to defer ruling on the Rule 33 motion so that the claim could be considered together with any other issues"). Thus the very purpose of the required Castro warnings is, at least in part, to discover whether petitioners have additional claims they wish to assert in an amended pleading. The district court in this case failed to provide the required warnings, and thus did not inquire whether Outler had any additional claims. In the absence of such an inquiry, Outler's failure to specify "additional claims" when he challenged the recharacterization of his motion cannot be the basis for denying the equitable tolling to which he is otherwise entitled.

32

Outler, to his credit, contested the recharacterization even without a Castro warning. His failure to specifically assert in 1996 that he had additional claims is analogous to the failure of the petitioner in Castro to appeal the recharacterization of his Rule 33 motion.[13] Both are understandable responses to the district court's failure to warn them about the consequences of the recharacterization. The Supreme Court concluded that Castro's failure to appeal the recharacterization made no difference to its analysis. Castro, 540 U.S. at 384. The Court held that unwarned pro se litigants—as both Outler and Castro were—simply cannot make informed judgments about whether to amend a petition or challenge a recharacterization. Id. "Indeed, an unwarned pro se litigant's failure to appeal a recharacterization simply underscores the practical importance of providing the warning." Id.

After reviewing the case record, I find it difficult to imagine how much more diligence Outler could have exhibited. For more than a decade, he has actively attempted to assert the substantive claims contained in his present § 2255 petition (some of which differ from those raised in his Rule 33 motion) despite the numerous procedural obstacles placed in his way. In my opinion, the district

---

[13] I note that, unlike Castro, Outler did appeal the judicial recharacterization of his Rule 33 motion, despite the fact that both Castro and Outler faced the same Circuit law at the time of their recharacterizations.

court's determination that Outler failed to show due diligence represents clear error.

**III. Equitable Tolling In This Case Is In Line With Persuasive Authority From Other Circuits, And Is Necessary To Vindicate The Supreme Court's Holding In *Castro***

Many of our sister circuits have considered this very problem, both before and after Castro, and concluded that it demands the application of equitable tolling. In United States v. Kelly, 235 F.3d 1238 (10th Cir. 2000), the United States Court of Appeals for the Tenth Circuit anticipated Castro, requiring that district courts ensure that pro se petitioners understand and agree to the consequences of treating a motion purportedly made under some other rule as having been made under § 2255. Id. at 1242. In doing so, the court recognized:

> [T]he one-year statute of limitations imposed by AEDPA ordinarily would bar the motion at this point. See § 2255, paragraph 6. At the time of the district court's ruling, Kelly had several months remaining in which to file a timely § 2255 motion, and it was the court's unilateral action that essentially prevented him from doing so. Additionally, he has diligently pursued his claim since then. Consequently, out of concern for fairness, we hold that the limitations period on the filing of Kelly's § 2255 motion should be tolled from the date the district court recharacterized his motion as a § 2255 motion, on October 18, 1999, until the date of this decision.

Id. at 1242-43 (emphasis added). Other circuits, likewise anticipating Castro,

34

reached the same conclusion. United States v. Miller, 197 F.3d 644, 652-53 (3d Cir. 1999) ("Because the District Court in this case unilaterally recharacterized Miller's post-conviction motions as a § 2255 motion despite Miller's subsequent objection, we will vacate the Court's order and remand the case so that Miller may make all of his collateral arguments in a single § 2255 motion. . . . [A]s in Adams, we will toll the statute of limitations to afford Miller his opportunity to refile his habeas petition. He should do so within 120 days or be barred from reconsideration.") (citations omitted); Adams v. United States, 155 F.3d 582, 584 n.2 (2d Cir. 1998) ("Because the district court's ruling came at a time when Adams still had several months in which to file a § 2255 motion, but had serious reason to doubt that he could satisfy AEDPA's stringent limitations on successive motions, fairness demands that the statute of limitations be tolled to afford Adams an opportunity to file his first § 2255 motion, provided that he does so promptly.").

Many of these opinions specifically foresaw the problems the statute of limitations would raise, and required district courts recharacterizing petitions to notify petitioners of the one-year limitation.[14] See, e.g., Adams, 155 F.3d at 584 n.2

---

[14] I believe that the majority overstates its position when it says that "[a]lthough Castro held that a pro se litigant should be given actual notice of the restrictions on successive § 2255 motions, no case has ever held that a pro se litigant should be given actual notice of a statute of limitations." Maj. Op. at 18 n.3. Many of our sister circuits have held exactly that, in cases just like this one.

("We note in addition that, in dealing with the question of possible recharacterization, district judges must be sensitive to another problem arising from AEDPA – its one-year period of limitation for the bringing of petitions under §§ 2254 or 2255. In giving notice to the movant on the issue of recharacterization, care should be taken to advise him of this limitation period.") (citation omitted); Morales v. United States, 304 F.3d 764, 767 (8th Cir. 2002) ("When a district court intends to reclassify a pro se litigant's pleading as a § 2255 motion, it must do two things. First, the court must warn the litigant of the restrictions on second or successive motions, and of the one-year limitations period, set forth in 28 U.S.C. § 2255. Second, the court must provide him an opportunity either to consent to the reclassification or to withdraw his motion."); United States v. Emmanuel, 288 F.3d 644, 649 (4th Cir. 2002) ("If a prisoner files a motion that is not denominated a § 2255 motion and the court at its option prefers to convert it into the movant's first § 2255 motion, the court shall first advise the movant that it intends to so recharacterize the motion. The court shall also notify the movant of the § 2255 restrictions on second or successive motions, the one-year period of limitations, and the four dates in § 2255 to be used in determining the starting date for the limitations period."); Miller, 197 F.3d at 652 (holding that the district court "should advise the petitioner that he can (1) have his motion ruled upon as filed; (2) if his

36

motion is not styled as a § 2255 motion have his motion recharacterized as a § 2255 motion and heard as such, but lose his ability to file successive petitions absent certification by the court of appeals; or (3) withdraw the motion, and file one all-inclusive § 2255 petition within the one-year statutory period.") (emphasis added).

The majority distinguishes these cases on the grounds that they involve petitioners who were planning to assert additional claims when their motions were first recharacterized. Although it is true that the petitioners in Kelly, Adams, and Miller all had additional claims they wished to assert, that fact was not central to the holding of any of the cases. Moreover, for the reasons set out above, I believe that Outler has sufficiently demonstrated that he had "additional claims" to assert, even though, in the absence of Castro warnings, it was never his burden to show them. Nor is it fair to distinguish Kelly, as the majority does, on the grounds that "[u]nlike Kelly, who successfully challenged the recharacterization of his claims in the same proceeding in which they were recharacterized, Outler is attempting to challenge a recharacterization ruling in a 1995 district court decision, affirmed by the Eleventh Circuit in 1998—a long closed case." Maj. Op. at 22-23. Outler is not "attempting to challenge a recharacterization ruling." He has already done so, successfully, as a prior panel of this Circuit faithfully applied Castro and held that the "recharacterization ruling" in this case was flawed. The fact that it occurred in

37

1998, and was not corrected until 2005, is no fault of Outler's. The petitioners in Kelly, Adams, and Miller succeeded because their Circuits' precedent—like that of "almost every Court of Appeals" except this one, Castro, 540 U.S. at 383—already required the warnings which the Supreme Court described in Castro.

Moreover, I note that if petitioners like Outler (or indeed Castro himself) were to be time-barred from filing the § 2255 habeas petitions which were forbidden before Castro, then Castro was a hollow holding indeed: Nearly all of the petitions which the Supreme Court clearly meant to allow as non-successive would now be time-barred. The Supreme Court, which is well aware of the time limitations AEDPA imposes on habeas filings, cannot have intended this result. For us to hold otherwise effectively undermines Castro's intended retroactive effect. See Castro, 540 U.S. at 788.

## CONCLUSION

The district court's sua sponte recharacterization of Outler's motion was unfair. The court today is equally unfair in denying him the benefit of a doctrine which was designed to correct such inequities. Outler is entitled to equitable tolling because he diligently pursued his claims despite the extraordinary circumstances caused by the district court's improper recharacterization of his

38

initial motion.[15]  For that reason, I respectfully dissent.

---

[15]  Because I believe that Outler is entitled to equitable tolling, I do not reach his claims that his petition was timely under 28 U.S.C. § 2255 ¶ 6(2) and (3).