[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-13015

Non-Argument Calendar

_____

SOULEYMANE DIALLO,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A079-059-186

_____

Before GRANT, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Fourteen years after his removal proceedings had ended, Souleymane Diallo, a Senegalese national, asked to reopen them so that he could apply for cancellation of removal. In his motion, Diallo argued that the Supreme Court's decision in *Pereira v. Sessions* justified giving him a second—and belated—chance to seek that relief. An immigration judge denied his motion, and the Board of Immigration Appeals agreed. So do we. Although recent Supreme Court decisions mean that Diallo might be eligible for cancellation of removal, they do not excuse his delay in moving to reopen his proceedings. We therefore deny his petition.

## I.

In 1999 Diallo entered the United States on a four-month tourist visa—and stayed long after that visa had expired. Four years later, the Department of Homeland Security apprehended Diallo and served him with a Notice to Appear that charged him with overstaying his visa. *See* 8 U.S.C. § 1227(a)(1)(B). The Notice to Appear also told him that he needed to attend removal proceedings in Atlanta at a date and time "to be set." In August 2003, the Atlanta Immigration Court sent to Diallo a Notice of Hearing informing him that his removal hearing would occur at 9:00 a.m. on March 4, 2004. Diallo attended that hearing and was granted voluntary departure, a form of discretionary relief that allowed him "to voluntarily leave the country" at his own expense by a set date:

here, June 2, 2004. *Id.* § 1229c(a)(1); *Blanc v. U.S. Att'y Gen.*, 996 F.3d 1274, 1278 (11th Cir. 2021).

Once again Diallo did not leave on time. He stayed in the United States for over a decade, neither running afoul of immigration authorities nor obtaining a right to remain. Then in 2018—more than fourteen years after his removal proceedings had ended—he moved to reopen them so that he could apply for cancellation of removal.

Cancellation of removal allows an otherwise removable person to remain in the United States. *See Barton v. Barr*, 140 S. Ct. 1442, 1445 (2020). A noncitizen is eligible for this relief if he meets four statutory requirements, one of which is that he must have been physically present in the United States continuously over the ten years preceding his application. *See* 8 U.S.C. § 1229b(b)(1). Under the Immigration and Nationality Act's "stop-time rule," a noncitizen stops accruing continuous physical presence when he "is served a notice to appear." *Id.* § 1229b(d)(1); *Pereira v. Sessions*, 138 S. Ct. 2105, 2109 (2018).

By 2018, circumstances had changed in a way that strengthened Diallo's claim for cancellation. For one thing, he had lived in the United States longer; in 2004 Diallo had lived in the country for only five years. For another, ten years had elapsed since the June 2004 deadline for Diallo's voluntary departure from the country. (His failure to depart by then had made him ineligible for cancellation for the ten years that followed. *See* 8 U.S.C. § 1229c(d)(1)(B).) And, most important of all, in 2018 the Court

held in *Pereira* that a Notice to Appear omitting the hearing time "does not trigger the 'stop-time rule.'" 138 S. Ct. at 2113–14. Diallo's Notice to Appear lacked that information. If nothing else triggered the stop-time rule, then, he had been accruing continuous physical presence in the United States since 1999.

Diallo thus believed that he now qualified for cancellation of removal, and asked an immigration judge to reopen his proceedings so that he could obtain this relief. But he had missed long ago the Immigration and Nationality Act's ninety-day deadline for filing a motion to reopen. 8 U.S.C. § 1229a(c)(7)(C)(i). So he also asked the IJ to reopen his proceedings sua sponte.

The IJ declined both requests. On appeal, the Board agreed. It noted that Diallo's motion to reopen was untimely, but rejected the motion on the merits because Diallo could not make a prima facie case for cancellation of removal. *See Bing Quan Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 873 (11th Cir. 2018). The Board reasoned that the Notice of Hearing had cured any defect in Diallo's Notice to Appear and, upon its service in August 2003, stopped him from accruing physical presence in the United States. The Board added that it would not reopen his case sua sponte, even if he were eligible, because the "accrual of equities in the United States, or becoming prima facie eligible for relief many years after having been ordered removed, is not an 'exceptional situation' warranting the exercise of sua sponte discretion." This petition followed.

## II.

Here, the Board did not expressly adopt the IJ's reasoning, so we review only its decision. *Zhang v. U.S. Att'y Gen.*, 572 F.3d 1316, 1319 (11th Cir. 2009). We lack jurisdiction to review its refusal to reopen Diallo's case sua sponte and thus limit our review to the Board's denial of his motion to reopen. *See Lenis v. U.S. Att'y Gen.*, 525 F.3d 1291, 1294 (11th Cir. 2008). Although we review that decision for an abuse of discretion, we review any underlying legal conclusions de novo. *See Li v. U.S. Att'y Gen.*, 488 F.3d 1371, 1374 (11th Cir. 2007).

## III.

Diallo primarily attacks the Board's conclusion that the August 2003 Notice of Hearing could cure the defective Notice to Appear and trigger the stop-time rule.[1] While his petition was pending, the Supreme Court rejected the Board's theory. In *Niz-Chavez v. Garland*, the Court held that only a single document with all the requisite charging and calendaring information counts as "a notice to appear" that stops a person from accruing physical presence. *See* 141 S. Ct. 1474, 1486 (2021). We therefore must disagree with the Board's reason for deeming Diallo ineligible for cancellation.

---

[1] Both here and before the Board, Diallo also argued that the IJ lacked jurisdiction over his removal proceedings because his Notice to Appear was defective. But he concedes that this Court rejected his argument in *Perez-Sanchez v. U.S. Attorney General*, 935 F.3d 1148, 1157 (11th Cir. 2019).

Diallo says that we should stop our analysis here, grant his petition, and remand this case to the Board. But we need not remand if the answer to a legal question undecided below would render any remand futile. *See Calle v. U.S. Att'y Gen.*, 504 F.3d 1324, 1330 (11th Cir. 2007). That question here is whether, as Diallo contends, a change in the interpretation of the governing law justifies equitable tolling of a filing deadline.[2] We have held that it does not. *See Outler v. United States*, 485 F.3d 1273, 1281–82 (11th Cir. 2007). Diallo's motion to reopen therefore is time barred, and remand is futile here.

His petition is **DENIED.**

---

[2] Diallo relies on *Bowen v. City of New York* to contend that the practice of sending incomplete notices was a "systematic procedural irregularity" that precluded him from filing his motion on time. 476 U.S. 467, 481 (1986). Unlike in *Bowen*, however, the government here did not engage in "secretive conduct" that prevented Diallo "from knowing of a violation" of his rights. *Id.* Rather, the government openly sent incomplete notices to appear and followed up with the hearing time—a practice that immigrants challenged (albeit with limited success) before *Pereira*. *See, e.g.*, *Matter of Camarillo*, 25 I. & N. Dec. 644, 645 (BIA 2011). The circumstance Diallo uses to argue for equitable tolling thus is not some clandestine procedural irregularity, but rather a change in how courts interpreted the applicable law.